# GOLDMAN & FREIMAN BOTTLING CO., Inc.,

## vs.

## EDWIN SINDELL.

*Negligence—Glass in Beverage Bottle—Res Ipsa Loquitur.*

One who bottles and sells to the public a drink which it represents as not injurious to health, thereby assumes a duty to the public of exercising at least reasonable care to see that such of its product as is sold for public consumption is not injurious to health.                                                                                          p. 497

The presence of broken glass in a bottle of a beverage at the time the bottle was sold by the bottler is evidence of negligence on the part of the latter.                                                                 p. 497

The sale of a beverage which may produce death or serious bodily injury to an unsuspecting customer, who buys it upon the representation that it is wholesome and safe, and with no warning of its real character, is so obviously destructive of the safety of the person drinking it, and so tortious in its nature, as to justify the application of the doctrine of *res ipsa loquitur*.
                                                                                                          pp. 500, 501

The "control" by defendant of the injurious agency, which is necessary to render the doctrine of *res ipsa loquitur* applicable as against him, is not necessarily such control at the time of the injury, but it is sufficient that the agency was in his control at the time of the negligent act which caused the injury.
                                                                                                          pp. 501, 502

*Decided February 8th, 1922.*

Appeal from the Baltimore City Court (SOPER, C. J.,).

Action by Edwin Sindell against the Goldman & Freiman Bottling Company, Inc., on account of personal injuries. From a judgment for plaintiff in the sum of four hundred dollars, defendant appeals. Affirmed.

## Prayers.

The granted prayers of defendant were as follows:

*Defendant's Fourth Prayer.* The defendant prays the court to instruct the jury that under the undisputed testimony in this case, the defendant was not an insurer of the plaintiff's health and safety while drinking the bottle of Whistle referred to in the testimony, and for a mere accident mixed with negligence, no action will lie even though an injury has been done; and if the jury shall further find from the evidence that there was no negligence on the part of the defendant, its agents and employees, then their verdict should be for the defendant.

*Defendant's Fifth Prayer.* The defendant prays the court to instruct the jury, that even if they find for the plaintiff, the jury are to allow him only such damages as in their opinion has been affirmatively proved with reasonable certainty to have resulted as the natural proximate and direct result of the injury received by him as mentioned in the evidence.

*Defendant's Sixth Prayer.* The court instructs the jury, that if they believe from the evidence that the bottle, from which the plaintiff testified that he swallowed parts of glass, was broken by the retail dealer from whom the plaintiff bought it, or by the plaintiff or by the retail dealer opening it, or in any other manner, excepting by the negligence of the defendant, then their verdict must be for the defendant.

*Defendant's Seventh Prayer.* The court instructs the jury, that the burden of proof is upon the plaintiff to establish by the weight of the evidence that the defendant was negligent; and further that the accident complained of was directly due thereto; and unless it has been shown by the weight of the evidence to the satisfaction of the jury that the defendant was negligent and that the accident was directly due to its negligence, the verdict of the jury should be for the defendant in this case.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Sylvan Hayes Lauchheimer* and *Jacob S. New,* with whom was *Julius H. Wyman* on the brief, for the appellant.

The burden was on plaintiff to show negligence. *Flaccomio* v. *Eysink,* 129 Md. 367; *Waters-Pierce Oil Co.* v. *Descalms,* 212 U. S. 159; *Benedict* v. *Potts,* 88 Md. 52; *Brown* v. *Marshall,* 47 Mich. 576 (per Cooley, J.).

The doctrine of *res ipsa loquitur* is not applicable to such a case. *Strasburger* v. *Vogel,* 103 Md. 85; *Streett* v. *Hodgson,* 139 Md. 149.

In the following cases, analagous to this case, the doctrine of *res ipsa loquitur* was held inappliacable. *Standard Oil Co.* v. *Murray,* 119 Fed. 572, 57 C. C. A. 1 (explosion of oil); *Ketterer* v. *Armour,* 247 Fed. 921 160 C. C. A. 111 (injury from diseased pork); *Birmingham Chero-Cola Bottling Co.* v. *Clark* (Ala.), 89 So. 64 (flies in chero-cola); *Berger* v. *Standard Oil Co.,* 126 Ky. 155 (159), 103 S. W. 245, 11 L. R. A. (N. S.) 238 (negligence in sale of lubricating oil); *Stone* v. *Van Noy Railroad News Co.,* 153 Ky. 240, 154 S. W. 1092 (explosion of a bottle); *Gould* v. *Slater Woolen Co.,* 147 Mass. 315, 17 N. E. 531 (dye in cloth); *Crocker* v. *Baltimore Dairy Lunch Co.,* 214 Mass. 177 (179), 100 N. E. 1078 (ptomaine poisoning from food negligently sold); *Ash* v. *Child's Dining Hall Co.,* 231 Mass. 86, 120 N. E. 396, 4 A. L. R. 1556 (black tack in blueberry pie); *Wheeler* v. *Laurel Bottling Works,* 111 Miss. 442, 71 So. 743, L. R. A. 1916 E. 1074 (explosion of bottle of coca-cola); *Glaser* v. *Seitz,* 35 Misc. Rep. 341, 71 N. Y. Supp, 942 (explosion of siphon of seltzer water); *Jacobs* v. *Childs Co.,* 166 N. Y. Supp. 798 (nail in piece of cake); *Dail* v. *Taylor,* 151 N. C. 284, 66 S. E. 135, 28 L. R. A. (N. S.) 949 (explosion of bottle of coca-cola); *Cashwell* v. *Fayetteville Pepsi-Cola Bottling Co.,* 174 N. C. 324, 93 S. E. 901 (explosion of bottle of pepsi-cola); *Crigger* v. *Coca-Cola Bottling Co.,* 132 Tenn. 545, 179 S. W. 155, L. R. A. 1916 B. 877 (decomposed mouse in bottle of coca-cola; cited in *Flaccomio* v. *Eysink,* 129 Md. 378); *Hasbrouck* v. *Armour & Co.,* 139 Wis. 357,

121 N. W. 157, 23 L. R. A. (N. S.) 876, 21 Am. Neg. Rep. 430 (needle embedded in cake of soap); *Bates* v. *Batey & Co.,* (1913), 3 K. B. Div. (Eng.) 351 (explosion of bottle).

A brief analysis of the cases cited by appellee will disclose that none of them supports the proposition that, in a case like this, the fact of injury is evidence of negligence.

*Laurence S. Kaufman,* with whom were *Kaufman & Kaufman* on the brief, for the appellee.

There is a presumption of negligence from the presence of foreign substances in food, imposing liability on the manufacturer. 4 *A. L. R.* 1560, and cases there cited; *Jackson Coca-Cola Bottling Co.* v. *Chapman,* 106 Miss. 864, 64 S. W. 791; *Boyd* v. *Coca-Cola Bottling Works,* 132 Tenn. 23, 177 S. W. 80; *Watson* v. *Augusta Brewing Co.,* 124 Ga. 121, 1 L. R. A. (N. S.) 1180 (note); *Criggs* v. *Coca-Cola Bottling Co.,* 132 Tenn. 545, L. R. A. 1916 B, 878; *Martin* v. *Waycross Coca-Cola Bottling Co.,* 18 Ga. App. 226; *Chysky* v. *Drake Co.,* 182 N. Y. Supp. 459; *Terney* v. *Ward Baking Co.,* 167 N. Y. Supp. 562; *Drury* v. *Armour Co.,* 140 Ark. 371, 216 S. W. 40; *Rosenwaike* v. *Transit Co.,* 175 N. Y. Supp. 828.

OFFUTT, J., delivered the opinion of the Court.

On September 21st, 1919, Edwin Sindell purchased at the "Park Confectionery," a store conducted by John Griffith and located at the corner of Park Avenue and the Belair Road, in Baltimore City, a bottle of a beverage called "Whistle." The bottle was opened in his presence and handed to him, and he drank from it nearly all of its contents. While he was in the act of drinking he felt "some sharp portions" in his mouth and felt something "cut his throat as he was swallowing," and upon examination he found that the sharp particles were glass and that some particles of glass remained in the bottle. As a consequence of swallowing the glass he claimed that he became ill, was nervous, suffered pain, spat

blood, fell off in weight, and was for several weeks unable to work.

To recover for these injuries he sued the "Whistle Bottling Company" in the Baltimore City Court, and later by consent amended the declaration by joining the "Goldman & Freiman Bottling Company, Inc.," as a defendant.

The case was tried before a jury and the verdict and judgment being for the plaintiff, the Goldman & Freiman Bottling Company, Inc., took this appeal. The record contains four exceptions, the first three of which relate to the rulings of the trial court on questions of evidence, and the fourth to its rulings on the prayers, and this exception we will now consider. The plaintiff offered one prayer, which stated the measure of damages and was granted. The defendant offered eight prayers. The fourth, fifth, sixth, and seventh of these prayers (which the *Reporter* is requested to set out in the report of this case) were granted, and the others refused. The four rejected prayers were based upon the theory that under the pleadings there was no evidence in the case legally sufficient to entitle the plaintiff to recover, and that therefore the jury should be directed to find for the defendant. If the plaintiff was entitled to recover at all, the plaintiff's prayer fairly stated the measure of damages, and the only question before us under this exception, therefore, is whether, conceding the truth of the evidence supporting the plaintiff's case and such inference as may naturally and reasonably be drawn therefrom, it is legally sufficient to entitle him to recover under the pleadings. The negligence complained of in the declaration was "bottling and selling to the public" a "drink which was dangerous," and the material evidence relating to that charge is, in substance, this: Edwin Sindell, the plaintiff, testified that on the occasion referred to he went into the Park Confectionery and purchased a bottle of "Whistle" and that he "drank very nearly all of the Whistle that was in the bottle, when he felt some sharp portions in his mouth, and he looked at the bottle and he saw glass, and he spit out what he had in his mouth,

and he noticed just before he felt something cut his throat as he was swallowing, and in a store where a crowd is he did not pay any attention to that. So about three minutes after that he was taken sick and he was vomiting and vomited blood which was caused by the glass, he supposed, in his stomach, and for six months after that he went to a physician and he lost four weeks' work, and dropped down from 136 pounds to 118 pounds from the nervous strain on him and from the nervousness and worry of it, being he knew positively he had glass in his stomach, and he was to see the physician quite a while." After giving a more detailed description of his injuries, he further testified that "when he bought the bottle it was not already open; that Mr. Griffith's wife opened it with a bottle opener in the presence of the witness and also in the presence of his brother-in-law; by a 'bottle opener' the witness means a hand bottle opener, the kind that you carry in your pocket; that she did not open it with one attached to the counter; that she opened it up by getting under the stopper and opening it up. That the bottle did not have a cork in it at the time; it had a cap on it. * * * That he held the bottle up to his lips, 'you know how a man does when he is laughing and talking, he does not pay any attention to it.' That he was in there with three or four people, and just put the bottle up to his lips and drank it without paying any attention to the contents until he felt something cut his throat and a portion of the glass in his mouth; that he spit out what was in his mouth; that he did not save the particles of glass that were in his mouth, that he spit them out on the floor; that the sensation he felt while he was swallowing these particles of glass was like something cutting his throat, but he did not pay any attention to it just then, but when he had drank the rest of the contents of the bottle and felt it in his mouth, he spit out what he had in his mouth." He also identified a bottle shown him at the trial as the bottle containing the "Whistle" which he drank. John M. Griffith, the proprietor of the Park Confectionery, said that on the occasion referred to Sindell came into his

store and called for a bottle of "Whistle," and that Mrs. Griffith, wife of the witness, "took the bottle of Whistle out of the ice box and opened it and handed it to the plaintiff, and the plaintiff turned it up and drank it, and then he spit out some of the contents and handed the witness' wife back the bottle; the plaintiff handed the bottle of Whistle back— handed it to the witness' wife—and the witness went over and examined it, examined the bottle. It had a lot of pow- dered glass in the bottom of it, and they examined the bottle close to see if the bottle was broken in any way, but the bottle was perfect." He further testified, quoting from the rec- ord, "that at the time the plaintiff handed it to the witness' wife there was a little liquid in it, about that much (indi- cating). That the witness purchased Whistle from the Whis- tle Bottling Company, Goldman & Freiman, on South Eden Street. That the bottles of Whistle had a crown on it, like most all soft drinks; that the witness' wife opened the bottle of Whistle which the plaintiff purchased; that she opened it with one of the regular cap openers; that after the witness purchased the bottle of Whistle he did not put anything in the bottle, nor did he take anything out of the bottle, before he sold it, and that it was sold in the same condition in which he had purchased it." On cross-examination he testi- fied that he had dealt in "Whistle" since he had opened the store in May, 1919; that he bought it from the driver of a wagon who took away the empty bottles and left as many full ones in their place as were needed, for which he paid cash. He also testified that he kept clean glasses and clean straws for persons who wanted them.

Joseph O. Freiman, vice-president and secretary of the Whistle Bottling Company, called as a witness for the plain- tiff, identified the bottle produced at the trial as one of "their registered" bottles, and further testified "that his company put the liquid in the bottle; that his company was a bottler of Whistle on September 24, 1919, but did not have the exclusive right in Maryland to bottle Whistle." He also testified that he did not know whether Griffith was a customer

of theirs; that, while that store was on route No. 6, he did not know who the driver on that route was at that time; that he could not tell whether his company put the liquid in the bottle produced in court, but that it did put "Whistle" in "Whistle" bottles; that there are about twenty "Whistle" bottling companies in the State, but only one in Baltimore, in which territory the appellant had the exclusive right of sale, and that no other company could "sell a customer in Baltimore City"; that they would not let them if they knew it, and that "they have two kinds of wagons—that the old wagons which they had repainted have on them 'Goldman & Freiman Bottling Co., Inc.,' but on the new wagons they put 'Whistle Bottling Company,' but not incorporated. * * * That whether they had on them 'Whistle Bottling Company' or 'Goldman & Freiman Bottling Company' at that time, that they were the wagons belonging to the witness' company." He further testified that the Goldman & Freiman Bottling Company operates under the trade name of the "Whistle Bottling Company," which is not a corporation, but merely a name used for trade purposes, and that his company bought the syrup used in making "Whistle" from the Whistle Company of America. That it was sold through drivers, who were charged with the number of cases delivertd to them at the beginning of their trips and who accounted for them up their return.

On behalf of the defendant, Joseph Goldman and Joseph O. Freiman described in detail the manufacture and bottling of the beverage in question. In effect their testimony was that "Whistle" is composed of water, gas and syrup and that, in the process adopted by them of blending or mixing these ingredients, it would be impossible for any broken glass to be or remain in the finished product; that the water is conducted directly from the city mains through a set of filters to a carbonator and thence to the filling machine, where it is mixed with the syrup; the syrup itself is also filtered and strained and that it would be equally impossible for glass to get into or remain in the bottle through the process of bottling. The

dirty · bottles are placed in a machine which carries them through a sterilizing solution to the filling machine where they are filled and capped; that during the process they are inverted and thoroughly cleansed by revolving brushes and in-spected under a strong electric light. The work is done by four men and a foreman who handle the bottles and operate the machines, and either Goldman, Freiman or the foreman is always present during the washing and filling of the bot-tles, and that the bottles were always washed before being re-filled. Their testimony was corroborated by other witnesses familiar with the manufacture and bottling of carbonated beverages.

Reduced to its material and essential facts the plaintiff's testimony shows that he purchased at Griffith's store a bottle of "Whistle"; that "Whistle" is a drink held out to the pub-lic as a pleasant and wholesome beverage; that the bottle was sealed when it was sold to Sindell and was opened in his pres-ence; that when sold to Sindell it was in the same condition in which it was when Griffith bought it from the appellant; that as it contained broken glass when he sold it to Sindell it also contained broken glass when he bought it from the appel-lant; and that because it contained broken glass Sindell was injured. On the other hand the defendant's testimony, if true, showed that the beverage was bottled in such a way and with such care that no foreign particles could have possibly gotten in the bottle while in their possession, and that there-fore the glass was not in the bottle when it sold it. The solu-tion of that conflict is purely a jury question, with which we have nothing to do, the only question before us being whether the evidence in the case permits the conclusion that the de-fendant was guilty of the negligence charged in the declara-tion. The one vital and essential fact involved in that in-quiry is that, at the time the appellant sold the bottle of Whistle to Griffith, it contained broken glass. The plaintiff's testimony, if true, proves that, and the prayers under consid-eration concede that it is true. It is true that the defendant's

testimony is that, because of the character of machinery and the care employed in manufacturing and bottling the "Whistle," it was impossible for the glass to have been in the bottle when it sold it, and therefore there was no glass in it then, but the plaintiff's evidence was that the glass was in the bottle when the defendant's driver and agent delivered it to Griffith and as the truth of that testimony, for the purpose of this question, is admitted, we must assume that there was broken glass in the bottle of "Whistle" when it was sold to Griffith. The question then is whether any inference of negligence can be drawn from that fact. It would not of course *per se* permit the inference that the presence of the glass in the bottle was due to the operation of any particular agency, such as a defect in the machinery or the methods adopted for manufacturing the product, or a want of skill or care on the part of the persons employed in the process of its manufacture, nor is that the negligence charged. The negligence charged is this, that the appellant bottled and sold to the public a drink which it represented as not injurious to health, and that it thereby assumed a duty to the public of exercising at least reasonable care to see that such of its product as was sold for public consumption was not injurious to health, and that in violation of that duty it sold the bottle of Whistle eventually purchased by the plaintiff which, at the time it sold it, contained broken glass, and was for that reason likely to cause serious bodily injury to any one drinking it. The inquiry therefore is whether the presence of broken glass in the bottle at the time it was sold by the appellant was evidence of that negligence. In our judgment it was, and the law applicable to the facts of the case was clearly, accurately and fully stated in the defendant's granted prayers, which devolved upon the jury the duty of determining from that and all the other evidence in the case whether the defendant had been guilty of the negligence charged in the *narr.*

While the general rule defining the duty imposed upon the manufacturer of a product such as the one under considera-

tion has been variously phrased, the several definitions agree in substance. In 11 *R. C. L.,* page 1123, in referring to goods sold in sealed packages, it is said: "When the manufacturer puts the goods upon the market in this form he, in effect, represents to each purchaser that the contents of the can or package are suited to the purpose for which it is sold. Under these circumstances, the fundamental condition upon which the common law doctrine of caveat emptor is based is conspicuously absent; for the buyer has no opportunity to look out for himself. And when he thus buys and eats the contents of the package, relying upon the assurance of the manufacturer that they are fit to be eaten, it seems to result from general and fundamental principles that he has a right to insist that the manufacturer shall at least exercise care that they are so fit, and are not unwholesome and poisonous." In 26 *C. J.,* page 784, it is said: "A manufacturer, packer or bottler of foods or beverages is required to exericse the highest degree of care to see that such articles are fit and wholesome. * * * And for an injury resulting from the failure to exercise such care * * * he is liable to respond in damages."

The underlying principle running through these definitions was recognized and stated by JUDGE THOMAS, speaking for this Court, in *Flaccomio* v. *Eysink,* 129 Md. 381, where it is said: "It is the duty of every person to so conduct his business as not to knowingly or negligently expose others to imminent danger, and where an injury is sustained in consequence of the violation of that duty, without any negligence on the part of the party injured, justice demands that the guilty party should be held responsible." This brings us to the proposition that the presence of a noxious substance in the article sold is in itself evidence of negligence on the part of the manufacturer, when it is shown that the article contained such substance when it was sold by him. To quote again from the *Flaccomio Case, supra,* "There may be cases where the presence of a dangerous ingredient in the article sold may in itself justify an inference of negligence on the

part of the defendant." And what was there said appears
to be consonant with common sense and is abundantly sup-
ported by authority. In *Jackson Coca Cola Company* v.
*Chapman,* 106 Miss. 864, it was held that the unexplained
presence of a decomposed mouse in a bottle of coca-cola war-
ranted an inference of negligence on the part of the manufac-
turer, and to the same effect are *Boyd* v. *Coca Cola Bot.
Works,* 132 Tenn. 23, where a bottle of coca cola contained
a cigar stump; *Crigger* v. *Coca-Cola Bottling Co.,* 132 Tenn.
545, where a bottle of coca-cola contained a decomposed
mouse; *Bradfield* v. *Atlanta Coca-Cola Co.,* 24 Ga. App.
657, 101 S. E. 776, in which a bottle of coca-cola contained
broken glass. In the case last cited, decided by the Court of
Appeals of Georgia, in the court's syllabus it is said: "If the
jury should determine that after the bottle of coca-cola had
left the custody of the defendant there were particles of glass
in the bottle, either by handling or by opening it, then the
plaintiff could not recover against the defendant. These are
questions which must necessarily be determined by a jury."
The error involved in the appellant's contention that there
was no evidence of negligence on the part of the manufacturer
appears in this statement, in its reply brief, that "the plain-
tiff offered no evidence of negligence, and simply relied on the
happening of the injury." The defendant did offer evidence
of negligence when he showed that when the bottle of Whistle
was sold by the appellant it contained broken glass, and that
it was in consequence of that negligence that he was injured,
for it certainly cannot be said that the presence of so dan-
gerous a material as broken glass in a bottle of a beverage
represented as wholesome and safe, shown to be in it when
sold by the manufacturer, is no evidence of negligence on his
part. Nor are the Maryland cases cited by the appellant in
conflict with this conclusion, but it rests upon and is sup-
ported by them.

In *Flaccomio* v. *Eysink, supra,* the Court was not dealing
with the question of the manufacturer's negligence in such a
case as this, but with the responsibility of persons who had

bought the article in question from the manufacturer for re-sale, without any knowledge of its dangerous character, and the Court carefully distinguished that case from cases in which the dangerous condition of the article existed when it was sold by the manufacturer and when, as a result of his negligence, it was offered for public sale in such condition.

While in this case the presence of broken or ground glass in the bottle at the time appellant sold it, and when it could by careful inspection have discovered its dangerous character, was direct proof of a breach of the duty it owed the public to see that its product was not dangerous or unwholesome, and does not necessarily involve the doctrine of *res ipsa loquitur,* still there is nothing in the cases of *Benedick* v. *Potts,* 88 Md. 52; *Strasburger* v. *Vogel,* 103 Md. 85; or *Streett* v. *Hodgson,* 139 Md. 137, to prevent its application to the facts of this case. In the case last cited the Court through JUDGE ADKINS said: "In the absence of evidence from which, without speculating, the jury could draw a reasonable inference from the mere happening of such an accident, it should not be permitted to infer negligence from the occurrence alone," but while in that case the application of the doctrine depended upon the fact of the injury alone, here it depends upon the facts of the injury *plus* other facts from which it could be inferred that the injury was caused by the negligence of the defendant. In *Strasburger* v. *Vogel* it was said, speaking of the doctrine of *res ipsa loquitur*: "It is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring *negligence* as the cause of that accident," and in *Benedick* v. *Potts,* 88 Md. 55, it is said: "Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. But this inference must, after all, be a legitimate inference and not a mere speculation or conjecture. There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them. * * * There are instances in which the circumstances surrounding an

occurrence and giving a character to it are held, if unexplained, to indicate the antecedent or coincident existence of negligence as the efficient cause of an injury complained of. These are the instances where the doctrine of *res ipsa loquitur* is applied, * * * the doctrine which it embodies, though correct in itself, may be said to be applicable to two classes of cases only, viz., first, 'when the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation; second, where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of person or property and is so tortious in its quality as, in the first instance at least, to permit no inference save that of negligence on the part of the person in the control of the injurious agency.' *Thomas on Neg.* 574. * * * The injury, without more, does not necessarily speak or indicate the cause of that injury—it is colorless; but the act that produced the injury being made apparent may, in the instances indicated, furnish the ground for a presumption that negligence set that act in motion." The facts of this case may well fall within the principles thus stated, for it is certainly no extension of the rule to say that the sale of a beverage which may produce death or serious bodily injury to an unsuspecting customer, who buys it upon the representation that it is wholesome and safe, and with no warning of its real character, is a condition obviously destructive of the safety of the person drinking it, and so tortious in its nature as to permit no inference in the first instance save that of negligence. The appellant relies upon certain expressions in *Benedick* v. *Potts* in support of the proposition that as the Whistle was not in the control of the appellant when the injury was sustained the doctrine cannot be applied in this case. These expressions limit the application of the doctrine to cases of "negligence on the part of the person in control of the injurious agency," and to "negligence on the part of the person controlling the injurious agency." The "control" referred to in these expressions, is not necessarily control of the injurious agency at the time of

the injury but its control at the time of the negligent act
which caused the injury.   The expressions referred to are
usually found in definitions of the doctrine, as for instance in
29 *Cyc.* 591, where it is said: "Where the defendant owes
to plaintiff a duty to use care, and the thing causing the acci-
dent is shown to be under the management of defendant or
his servants, and the accident is such that in the ordinary
course of things does not occur if those who have the manage-
ment or control use proper care, the happening of the accident
in the absence of evidence to the contrary is evidence that it
arose from the lack of requisite care."   The reason for the
rule, it has been said, is that where the management and con-
trol of the injurious agency is exclusively vested in the de-
fendant he is able to produce the actual cause of the injury
which the plaintiff is unable to do.   *Griffen* v. *Manice,* 166
N. Y. 188.   The doctrine involved contains no arbitrary or
complex formulae, but is a simple rule of evidence depending
upon sound sense and reason, and amounts to no more than
this, that where the physical facts involved in an accident
are of such a character as to compel an inference that it re-
sulted from negligence, such facts are themselves evidence of
negligence.   29 *Cyc.* 591.   There is nothing, however, in the
reason for the rule or in the principles upon which it is
founded to support the contention that its application is
limited to cases where the injurious agency is in the control
of the defendant at the time of the injury, but it is sufficient
if it appears that such agency was in his control at the time
of the negligent act which caused the injury.   It would need-
lessly prolong this opinion to refer specifically to the cases
from other courts cited by the appellant.   They nearly all
involve accidents occurring through bursting bottles, where
the manufacturers of the beverage bought the bottles from
others; foreign substance in food where the material was
purchased from others by the person last selling it, and the
like—clearly falling within the principles announced in *Flac-
comio* v. *Eysink, supra,* but not applicable to a case such as
this against a manufacturer, where the dangerous condition

of the injurious agency was shown to exist when it left the manufacturer's possession. Many of them support the conclusion we have reached, while others are distinguishable upon the facts, but after a careful examination of them it is sufficient to say that we have discovered nothing which in our opinion is sufficient to overcome the good sense, sound reason, and the well considered decisions upon which our conclusion rests. It follows from what has been said that there was no error in the court's ruling on the prayers.

The first and second exceptions relate to the admission of certain testimony as to the appellee's health. The testimony appeared to be relevant and in our opinion was properly admitted. Thaddeus Parker, an expert witness for the defendant, having testified on cross-examination without objection that he had seen "foreign substances in coco-cola," was asked what these substances were, and over objection he was allowed to answer and said, "stray pieces of cork or dust that might work in with the crown." This is the subject of the third exception. Even if it is granted that the question was improper, the answer could not, in view of the previous testimony of the witness, have injured the appellant, and we find no reversible error in this ruling.

Finding no reversible error in the rulings involved in this appeal, the judgment will be affirmed.

*Judgment affirmed, with costs.*

---

ADKINS, J., filed a dissenting opinion as follows:

I regret that I cannot concur in the opinion filed by the majority of the Court.

The record does not seem to me to bear out the conclusion in the opinion that the defendant's evidence "showed that when the bottle of Whistle was sold by the appellant it contained broken glass." The testimony of John M. Griffith, the proprietor of the Park Confectionery, where plaintiff

bought the "Whistle," that "after the witness purchased the bottle of Whistle he did not put anything in the bottle, nor did he take anything out of the bottle, before he sold it, and that it was sold in the same condition in which he had purchased it," can mean nothing more than that the witness put nothing in the bottle. It had been in his store several days, and it appears from his own testimony that he was not there all the time. His wife who sold this Whistle is dead. Of course his statement that the bottle was in the same condition when sold to plaintiff as it was when witness purchased it, can only be a conclusion of the witness. He certainly did not mean that statement to be taken literally, for that would mean that he knew it had glass in it when he bought it and with such knowledge permitted it to be sold. It must be presumed that he had no such knowledge.

There is testimony in the case that the cap could be taken off and put back without detection except by experts, and the contents would not lose its effervescence for a week; and there is no denial of this.

It cannot be assumed, therefore, that the glass was in the bottle at the time it was delivered by the agent of appellant; and yet the opinion of the Court is based entirely on this assumption.

The opinion assumes not only that glass was in the bottle at the time it was delivered by appellant, but that it was there through the negligence of appellant. And this, notwithstanding the strongest kind of testimony of disinterested witnesses, as well as of those connected with the bottling plant, that every known precaution was used to insure cleanliness and to exclude foreign substances from the bottles, and the absence of the slightest evidence in refutation. What more could appellant have done to negative any possible presumption of negligence?

Without the slightest evidence, the opinion assumes that proper inspection would have discovered the dangerous character of the contents of the bottle, notwithstanding it was a

thick, cloudy liquid, according to the testimony; and further assumed the absence of proper inspection.

In spite of all these assumptions it is asserted that the conclusion reached by the Court does not necessarily involve the doctrine of *res ipsa loquitur.* This seems to me impossible. However, it is held that "there is nothing in the cases of *Benedick* v. *Potts,* 88 Md. 55; or *Streett* v. *Hodgson,* 115 Atl. 27, to prevent its application to the facts of this case." I most strongly dissent from that view.

I find nothing in this record to bring the present case within either of the two classifications to which the application of this doctrine is limited in *Benedick* v. *Potts.* To hold this appellant liable would be to make every manufacturer of articles of this character an insurer of everyone using his product against injury from the use thereof, due not only to the manufacturer's wrong doing, but to that of others for whom he is in no way responsible, and without regard to the number of hands through which it may have passed after leaving his custody; and this without the slightest evidence of negligence on the part of the manufacturer.

I do not understand that to be the law. In my opinion it was error to refuse defendant's first prayer, and the judgment should be reversed without a new trial.

STOCKBRIDGE, J., also dissents.