## COCA-COLA BOTTLING WORKS, INC. *v.* JOHN CATRON

[No. 90, October Term, 1945.]

*Decided March 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*G. C. A. Anderson,* with whom were *Robert H. Archer, Jr.,* and *William S. James* on the brief, for the appellant.

*Ernest Volkart,* with whom was *D. Paul McNabb* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This is an appeal from a judgment for the plaintiff in the Circuit Court for Harford County, in a case tried before the court and a jury. The jury's verdict of $2,000, on motion for a new trial, was reduced by the trial court to $750, and final judgment entered for the latter amount. Three questions are presented on appeal: (1) Whether the court properly refused to direct a verdict for the defendant, as requested by the defendant's demurrer prayers; (2) whether the court properly granted the plaintiff's prayer as to the measure of damages; and (3) whether the court correctly instructed the jury on the law of the case.

The plaintiff, John Catron, on the night of September 12, 1943, went to the restaurant of one Herbert Gittings in the village of Cedars, Harford County, where he ordered an egg sandwich and a bottle of Coca-Cola. While waiting for the sandwich, he took a bottle of Coca-Cola from a service box, removed the cap, went to a booth and started to drink from the bottle. He had drunk about half the bottle and taken a bite of the sandwich, when he became sick and rushed out of the restaurant with the bottle still in his hand. Outside he vomited and sent a small boy for the proprietor, who came out and was informed by the plaintiff that there was something wrong with the food or the Coca-Cola. Gittings held up the bottle to the light, and they both saw that it contained a dead mouse. The Coca-Cola had been bottled by the Coca-Cola Bottling Works, Inc., at Havre de Grace, Maryland, and delivered to Gittings for sale

to his customers. Gittings took the plaintiff to Dr. Gallion, who gave him a hypodermic of morphia to quiet him, and then took him home and helped put him to bed. Plaintiff testified that he vomited and retched all that night, and that an incision in his abdomen burst open, which his daughter taped. He remained in bed four or five days, during which time he was nauseated and unable to eat. This testimony was verified by members of his household. He also testified that it was about nine weeks before he could do any work.

The record shows that Catron suffered from stomach trouble long prior to the incident referred to, and had been treated by Dr. Snodgrass for gastric disturbances, vomiting and nausea. On January 27, 1943, he went to Johns Hopkins Hospital, where he was operated upon for a chronic duodenal ulcer. At the time of admission he complained of pain, retching, vomiting, constipation and inability to hold down his food. He left the hospital on February 25, 1943, but returned on June 16; June 22, July 1 and September 1, 1943, complaining of the same symptoms. The hospital record shows that on September 1, "patient has gained twenty pounds and is able to tolerate almost any kind of diet. Wound is o. k. There is no reason why the patient should not do light work."

On July 26, 1943, Catron asked assistance from the County Welfare Board, stating "he was not well enough to make a living for his family." On August 20, 1943, he complained to the County Health authorities of pains in his stomach, feeling sick at his stomach and stated that he was unable to work. He was advised to return to the hospital. After the Coca-Cola episode of September 12, 1943, he did not return to the Johns Hopkins Hospital until March 6, 1944, at which time the hospital records show: "patient is gaining weight * * * wants statement that vomiting caused present symptoms but I do not see how it could be possible and told patient so. He refused to cooperate with further examination * * * has hernia in upper portion of chest." He made another visit on May 16, 1944, when the intestinal diagnosis was

"ventral hernia, post-operative." He was told to return in one month, but never did so.

Dr. P. Byrd Hopkins, a practicing physician of twenty-five years and a graduate of the Johns Hopkins Medical School, testified from the hospital records and the testimony in the case, that the drinking of the Coca-Cola containing the mouse was not physically injurious, but he said: "It would be rather disgusting to most people to discover a dead mouse in any kind of a drink. * * * I think he was mentally disgusted with what he saw and that caused the vomiting."

Catron was a painter by trade but had no regular employment prior to the mouse incident. He testified that he had "a little job here and a little job there." He painted a porch for Mr. Terrell "and that took a little over a day." At the time of the incident on September 12, 1943, he testified, "I was working for myself—putting up a house—on my own place at Poplar Grove." There was no evidence whatever as to the value of his labor, or that he lost any work as the result of the incident.

The only other evidence in the case related to the precautions taken by the defendant company to prevent any foreign substances from getting into the bottles before they were sealed and the inspection of the product before it was put on the market.

The appellant contends that the evidence in the case does not establish a causal connection between the drinking of the Coca-Cola and the vomiting and other conditions that ensued. But we think the contention is untenable. At the argument it was not contended that there was no evidence from which the jury might infer that the mouse was in the bottle, at the time it was opened, and that its presence in the unopened bottle was due to negligence on the part of the defendant either in processing or in inspecting the product. *Armour & Co. v. Leasure*, 177 Md. 393, 406, 9 A. 2d 572; *Salisbury Coca-Cola Bottling Co. v. Lowe*, 176 Md. 230, 4 A. 2d 440; *Goldman & Freiman Bottling Co. v. Sindell*, 140 Md. 488,

117 A. 866, citing *Jackson Coca-Cola Co. v. Chapman,* 106 Miss. 864, 64 So. 791, and *Crigger v. Coca-Cola Bottling Co.,* 132 Tenn. 545, 179 S. W. 155. See also *Canada Dry Ginger Ale Co. v. Jochum,* D. C. Mun. App., 1945, 43 A. 2d 42. The point pressed was that the evidence does not exclude illness from causes other than the drinking of the Coca-Cola. But there was evidence that twelve days prior to the incident the plaintiff could tolerate almost any kind of diet, and he became ill immediately after drinking the Coca-Cola, when he had taken only one bite from the sandwich. There was no evidence that the latter contained foreign matter, but there was undisputed evidence that the bottle contained a mouse. This evidence permits an inference that drinking the Coca-Cola made him ill, and that it made him ill because it contained a mouse. According to the testimony of Dr. Hopkins the discovery of a dead mouse in a drink might cause anyone to vomit; if that had been the only injury, it would seem that recovery could still be had of nominal damages.

The fact that the plaintiff's condition made him peculiarly susceptible to nausea and injury from vomiting would not excuse the defendant from the consequences of its wrong. In *Baltimore City Passenger Railway Co. v. Kemp,* 61 Md. 74, 81, this Court, speaking through Judge Alvey, said: "It is the common observation of all, that the effects of personal physical injuries depend much upon the peculiar conditions and tendencies of the persons injured; and what may produce but slight and comparatively uninjurious consequences in one case, may produce consequences of the most serious and distressing character in another. And this being so, a wrong-doer is not permitted to relieve himself from responsibility for the consequences of his act, by showing that the injury would have been of less severity if it had been inflicted upon anyone else of a large majority of the human family." In the case at bar, we hold that there was legally sufficient evidence to take the case to the jury. The extent of the damage attributable to the

wrongful act was typically a question for the jury to determine in the light of the evidence presented, under proper instructions of the court.

The other questions presented may be discussed together. At the close of the testimony, the court granted the only prayer offered by the plaintiff, which was the usual prayer as to measure of damages. It instructed the jury that "they are to consider," among other things, "the plaintiff's loss of earnings during the period he was incapacitated." The defendant filed a special exception in writing to this part of the prayer "because there has been no evidence offered in this case legally sufficient to show what was 'plaintiff's loss of earnings during the period he was incapacitated'." Of the nine prayers offered by the defendant (in addition to the demurrer prayers) the court granted the third, fourth, seventh and ninth, and refused the rest. The ninth prayer (which does not appear in either of the printed appendices, but is set out in the transcript of record) reads as follows:

"The Court instructs the jury that even if they find their verdict for the plaintiff they can only allow him such damages as were the result of the vomiting and retching which occurred directly after he drank from the bottle of Coca-Cola in which he alleged there was a dead mouse."

The court then delivered an oral charge to the jury, in the course of which he said: "The testimony as to the damages sustained by the plaintiff in this case are very meagre. There is no satisfactory measure by which you can determine the amount of time that the plaintiff lost—absolutely none." No exceptions were taken to the charge, but the docket entries show that the special exception to the plaintiff's prayer was overruled, "exceptions to granting and refusing of prayers, overruling of motion and special exception reserved by [the] respective parties."

Rule 6, Part 3, Subd. III, of the Rules of Practice and Procedure adopted by this Court provides that instruc-

tions to the jury "may be given either orally or in writing or both," and that the court in its discretion, may instruct the jury upon the law of the case "either by granting requested instructions or by giving instructions of its own on particular issues or on the case as a whole, or by several or all of these methods." It is definitely stated that "an oral charge need not comply with the technical rules as to prayers." Any party "may object to any portion of any instruction given or any omission therefrom or to the failure to give any instruction, stating distinctly the portion or omission or failure to instruct to which he objects and the specific grounds of his objection." Upon appeal, a party, in assigning error in the instructions "shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the specific grounds of objection distinctly stated at that time; and no other errors or assignments of error in the instructions shall be considered by the Court of Appeals."

The practice adopted by the trial court in the case at bar, of granting prayers and supplementing them by an oral charge, does not commend itself to us, even though it is permitted by rule. We think the better practice, and the one least calculated to mislead the jury, is for the court to refuse all prayers, and make an oral charge, incorporating therein such portion, or all, of the requested instructions as the court may deem proper. In the case at bar, however, we think the legal effect was substantially the same.

It is not contended that the court erred in refusing any of the defendant's prayers, but it is contended that the oral charge was inaccurate and incomplete and that the objection to the plaintiff's prayer raised by the special exception, is open on appeal. We cannot consider any objections to the oral charge, not raised below, but we must consider the effect of the court's ruling upon the special exception, and the instructions as a whole.

A prayer allowing a jury to find facts not supported by evidence is defective. But it does not follow there was no evidence of loss of earnings in the case at bar. On the contrary, there was evidence that the plaintiff was able to perform light work on September 1, twelve days before the accident, that he was a painter by trade, and that he was working on his own home on September 12th. He testified that he was unable to perform any work for nine weeks after that date.

In *Salisbury Coca-Cola Bottling Co. v. Lowe,* 176 Md. 230, 4 A. 2d 440, almost the identical point was raised. In that case Lowe claimed to have been injured by drinking a bottle of Coca-Cola containing kerosene, the injuries consisting of gastric ulcers, rupture and loss of earnings. A special exception was taken to the plaintiff's damage prayer on the ground that there was no proof of medical expense and loss of earnings. But the court said (176 Md. at page 243, 4 A. 2d at page 446): "It is true that there was an absence of proof tending to fix the amounts paid for medical attention, medical supplies of their value; but it cannot be assumed that those items were gratuitously furnished. In other words, while there was evidence of medical attention and loss of time, evidence of the actual amount of expense or loss thereby sustained by the plaintiff was lacking. Under this state of facts, it would have been competent for the defendant to have sought an instruction limiting the recovery in this respect to nominal damages, but, in our opinion, the special exception was properly overruled."

That is almost precisely what the defendant did in the case at bar; he offered his ninth prayer, which was granted by the court, limiting recovery to "such damages as were the result of the vomiting and retching which occurred directly after he drank from the bottle." And in the oral charge, the court told the jury there was absolutely no satisfactory measure to determine the amount of time the plaintiff lost. These instructions were not contradictory but complementary. *Potts v.*

*Armour & Co.*, 183 Md. 483, 39 A. 2d 552; *Fisher v. Baltimore Transit Co.*, 184 Md. 400, 41 A. 2d 297; *Mitchell v. Dowdy*, 184 Md. 634, 42 A. 2d 717. We find no error in the court's ruling, and we think the granted prayers and the oral charge, taken together, fairly presented the case to the jury.

*Judgment affirmed, with costs.*