## PETERSON ET AL. *v.* GOODYEAR TIRE AND RUBBER COMPANY, ET AL.

[No. 258, September Term, 1968.]

*Decided June 5, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Theodore Cornblatt* and *Archibald Eccleston, III* for appellants.

*David M. Buffington,* with whom was *Sidney G. Leech* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This is an action for personal injuries and property damage sustained by Gordon W. Peterson as a result of a collision between an automobile which he was operating and a truck owned by the Goodyear Tire and Rubber Company and operated by its agent, Earl D. Newton. Suit was filed in the Circuit Court for Baltimore County by Peterson and his wife as plaintiffs (appellants) against Goodyear and Newton as defendants (appellees). The American Casualty Company joined in the suit as a party plaintiff in order to recover moneys paid to Peterson under the Workmen's Compensation Act. After a four day trial, the jury returned a verdict for the plaintiffs in the amount of seventy dollars ($70.00). The trial court denied plaintiffs' motion for a new trial and they bring this appeal.

The following facts gave rise to the cause of action: On August 16, 1966, at approximately 9:20 A.M., Gordon W. Peterson was driving his automobile in a westerly di-

rection on Eastern Boulevard near the intersection of Old Eastern Avenue in Baltimore County, Maryland, when he became involved in an accident with a truck owned by the appellee Goodyear and driven by its employee, the appellee Newton. Goodyear's truck was also proceeding in a westerly direction on Eastern Boulevard and was in the process of moving from the center lane to the right curb lane when it struck the Peterson automobile which was being operated in the right hand lane. The right front bumper of the appellee Goodyear's truck struck the side of the left front fender of Peterson's car, causing a gash in the fender. This damage was repaired at a cost of approximately seventy dollars ($70.00).

Mr. Peterson also claimed that he sustained an aggravation of a pre-existing back condition and that he became obligated for medicine, hospital and medical attention as a result of that aggravation. This appeal revolves around the sole issue of whether or not the trial court committed reversible error in refusing to grant the appellants' requested instruction on damages (as to the law applicable), in cases involving the question of an aggravation of an alleged pre-existing physical disability.

There was a great deal of testimony at the trial which related specifically to whether the accident caused an aggravation of Peterson's pre-existing back condition. The plaintiff Peterson, the police officer who investigated the accident, the defendant Newton, and the manager of the Goodyear store where Newton worked, all gave conflicting testimony as to whether or not Peterson's car had jumped the curb after having been struck; it was Peterson's claim that it had, and that in so doing it caused his body to be "bounced around inside" the car. Four medical experts testified at the trial, three on behalf of Peterson, and one on behalf of the defendants. The plaintiffs' experts all felt that the accident involved in this case was sufficient to activate a pre-existing back condition but on cross-examination they admitted that this opinion was based on the assumption that Peterson's statement, that he had experienced no back difficulty prior to the date of

the accident, was true. None of these three doctors had examined or treated Peterson prior to the accident.

The defendants' medical witness was the doctor who had treated Peterson for his back problems prior to the accident and had also examined him after the accident occurred. It was his opinion that Peterson had a slowly developing degenerative disease of the back and that he was organically the same after the accident as before it.

At the conclusion of the case, the trial court denied all written instructions offered by counsel and charged the jury on damages, in pertinent part, as follows:

> "If you find for the Plaintiff husband, Gordon Willis Peterson, then, in considering and estimating the damages, you are entitled to take into consideration the state of health and physical condition of the Plaintiff prior to his injuries and in consequence of his injuries. You should consider the physical and mental suffering to which he may have been subjected to by reason of the injuries, as well as medical expenses, hospital expenses, pharmaceutical and other monetary losses incurred as a result of the injury to which he has been subjected. You shall consider whether or not these injuries are permanent and how far, if at all, they are calculated to disable him from engaging in those activities and occupations which, in the absence of such injuries, he would otherwise have been capable of engaging. You are to take into consideration the loss of wages and you are to take into consideration, if any, to the Plaintiff, the amount of damages to the vehicle.

> \* \* \*

> "Taking into consideration these matters, you should award, if you find in favor of the Plaintiffs, such damages as in your opinion would be fair and just compensation for the injuries, expenses and losses which you may find were suf-

fered as a consequence of the accident. You are to keep in mind that these damages are to be just exactly what I have said, that is, fair and just compensation. They are not to be of a punitive nature. They are not intended to punish the Defendant and they are not intended to reward the Plaintiff. They are intended to be fair and just compensation for the injuries and expenses."

With these instructions the jury returned a verdict for seventy dollars ($70.00), the amount of the damage to Peterson's car.

The jury having found in favor of the appellants (plaintiffs below) on the question of the appellees' (defendants below) liability, then they were entitled to recover for all damages that they sustained, even though the husband plaintiff may have been susceptible to injury because of a previous infirm condition. We now come to the question of whether the appellants were entitled to the following instruction which they requested and the court denied:

"The Court instructs the jury that the fact that the plaintiff, Gordon Willis Peterson, may have had a pre-existing condition which made him peculiarly susceptible to the injury complained of in this action would not excuse the defendants from the consequences of their wrongs if the jury finds that to be the case.

"It is the common observation of all that the effects of personal physical injuries depend much upon the peculiar conditions and tendencies of the persons injured; and what may produce but slight and comparatively uninjurious consequences in one case may produce consequences of the most serious and distressing character in another. This being so, a wrong doer is not permitted to relieve himself from responsibility for the consequences of his act by show-

ing that the injury would have been of less severity if it had been inflicted upon anyone else of a large majority of the human family."

It is the appellants' contention that they were entitled to the above instruction because the issue of the aggravation of the husband's pre-existing injury was the theory of their case pertaining to damages. They contend that it was important for the jury to specifically know that, if they believed the testimony as to the husband's weakened condition, it was an element of the accident which the defendant had to accept, and that a tort-feasor, literally, must take his victim as he finds him. Again, we have no quarrel with this proposition of the law regarding a defendant's obligation to respond in damages in such a situation but the question which cannot be ignored is, whether in this case, the "before and after" instruction as to damages given by the court was legally sufficient to embrace the issue pressed by the appellants. Assuming, arguendo, that is was, we have the further question as to whether the appellants' case was prejudiced by the trial court's refusal to grant the instructions.

Concerning the requested instructions, we note that the second paragraph is a direct quote from the opinion of Chief Judge Alvey in *Baltimore City Passenger Railway Co. v. Kemp,* 61 Md. 74, 81 (1883). Although, in *Baltimore City* the aggravation of a pre-existing condition was not an issue, as the injury concerned a blow which a female plaintiff had sustained to her breast which developed into cancer, yet, the quotation from Judge Alvey is an appropriate statement of the law concerning the proposition that a defendant must accept the frailties with which the plaintiff may be afflicted. *Coco-Cola Bottling Wks. v. Catron,* 186 Md. 156, 161, 46 A. 2d 303 (1946).

In support of the first paragraph of the requested instructions on aggravation of a pre-existing condition, the appellants cite *Straughan v. Tsouvalos,* 246 Md. 242, 228 A. 2d 300 (1967) ; and *Ruella v. MacCauley,* 200 Md. 461, 154 A. 2d 715 (1959). It should be noted that in *Strau-*

*ghan,* the appellant objected to an instruction on aggravation of a pre-existing condition, contending that there was no legally sufficient evidence upon which to base a prayer concerning aggravation. In *Ruella,* the appellant complained because an instruction on aggravation of pre-existing physical conditions was improperly given. In neither case was the issue, the refusal of the court to grant an instruction, specifically addressed to the question of the aggravation of a pre-existing condition.

In the instant case, we think that it may well have been proper for the court to have granted the requested instruction on the aggravation of the pre-existing condition; however, in view of the facts of this case, and the instructions which the court did give, we do not think it erred in refusing an instruction directed specifically to the question of the aggravation of the alleged pre-existing condition.

The trial judge had the benefit of hearing all of the testimony adduced and it was his duty to give a fair and comprehensive instruction. There was considerable evidence concerning the possibility that the accident was sufficient to have activated the pre-existing back condition, assuming that it existed. We note, however, that of the three physicians who testified as to the accident being sufficient to have caused an aggravation of the pre-existing condition, none of them had examined the husband plaintiff prior to the accident. The only doctor who had examined him before the accident testified that he was organically the same after the accident.

We think the instruction given by the trial court wherein it stated:

"* * * [Y]ou are entitled to take into consideration the state of health and physical condition of the Plaintiff prior to his injuries and in consequence of his injuries. You should consider the physical and mental suffering to which he may have been subjected to by reason of the injuries * * *. You shall consider whether or not

these injuries are permanent and how far, if at all, they are calculated to disable him from engaging in those activities and occupations which, in the absence of such injuries, he would otherwise have been capable of engaging. * * *."

was in comport with the law on damages applicable to the facts of this case.

In *Aleshire v. State*, 225 Md. 355, 170 A. 2d 758, (1961) we stated:

"* * * Requested written instructions, even though they be correct expositions of the law, need not be granted, provided 'the matter is fairly covered by instructions actually given; * * *.' Maryland Rule 554 b 1." *Id.* at 370.

See *Gast, Inc. v. Kitchner*, 247 Md. 677, 688, 234 A. 2d 127 (1967); *Simco Sales v. Schweigman*, 237 Md. 180, 187, 205 A. 2d 245 (1964); *Maggio v. State, Use of Houser*, 227 Md. 531, 536, 177 A. 2d 837 (1962); *Leslie v. Alexander*, 226 Md. 635, 639, 174 A. 2d 775 (1961).

Nor do we think the case at bar, although differing on the facts, presents a question much different than that presented in *Lemons v. Chicken Processors*, 223 Md. 362, 164 A. 2d 703 (1960), wherein the requested instruction overemphasized the standard of care owed by a motorist, this Court stating:

"* * * If the trial court had undertaken to discuss the facts in detail in the charge to the jury, we may assume that an instruction along the lines requested, not overemphasizing any one factor or carrying the implication of any higher degree of care being required, would have been proper and, indeed, should have been given. But in the instant case, the trial judge did not give a charge reviewing the facts in detail, and we do not think that he was bound to do so. Sometimes a charge embodying a particular rule of law may be necessary in order to prevent an

abstract, general charge which is granted, and which may in itself be a correct charge, from being misleading. *State, Use of Taylor v. Barlly,* 216 Md. 94, 99, 140 A.2d 173. In the present case, however, we find no such situation. The type of charge to be given—whether detailed or general—was within the discretion of the trial judge, and he was not required to include the requested instruction in it. *Ager v. Baltimore Transit Co.,* [213 Md. 414, 132 A. 2d 469]." *Id.* at 369.

See *Flohr v. Coleman,* 245 Md. 254, 264, 225 A. 2d 868 (1967).

In the instant case it may well have been that the trial judge was of the opinion that the general instruction given on the personal injuries sustained, embracing the "before and after" physical condition of the husband plaintiff was the most fair and impartial instruction that he could give under the facts of the case.

Certainly, under the instructions given, it was fair game and permissible for counsel for the plaintiffs to freely argue before the jury the presence and effect of the pre-existing back condition of the husband and the aggravation of this condition which the accident may have activated. We feel that the instructions given were adequate and fair and that the failure to grant the requested instruction, although the same may have been proper, did not prejudice the plaintiffs' case.

*Judgment affirmed, appellant to pay costs.*