Argued December 20, 1929; affirmed May 20; rehearing denied
June 17, 1930

# RHODES *v.* LIBBY, McNEILL & LIBBY

(288 P. 207)

*Fletcher Rockwood* of Portland (David L. Davies and Carey & Kerr, all of Portland, on the brief) for appellant.

*Dan J. Kenney* of Portland (Claude Johns and W. A. Robbins, both of Portland, on the brief) for respondent.

BEAN, J. This is an appeal by defendant from a judgment for damages in favor of plaintiff in an action for breach of contract for sale of food products manufactured by defendant and sold to plaintiff. The cause was tried by the court and a jury.

The defendant, upon a written order, sold to plaintiff two hundred and fifty barrels of "sweet relish," a compound manufactured by defendant, to be used for a particular purpose as an ingredient of a sandwich spread manufactured and vended at wholesale and retail by plaintiff. The sale was made by sample, to be shipped commencing December, 1926, to December, 1927. The first shipment of five barrels was rejected by plaintiff because inferior to the sample.

The second shipment of five barrels proved also to be inferior, but defendant, upon examination thereof, urged plaintiff to use the same and receive further consignments upon the promise the future shipments would conform to the sample. Relying upon the new promise of defendant, plaintiff accepted and used the goods as an ingredient in the compounding of a large quantity of his sandwich spread and sold and delivered two or three hundred cases of it to retail merchants and customers, which was invoiced at $1,200.

The testimony tended to show that all of the sweet relish supplied plaintiff by defendant was inferior and different from the sample and contained an element unknown to plaintiff, which caused the sandwich spread to spoil, decay and ferment, creating an explosive which blew off caps of bottles, exploded containers, making the sandwich spread unfit for human consumption and creating a dangerous agency, which damaged the merchandise on the shelves where the sandwich spread was placed.

Plaintiff, after protracted efforts of adjustment with his customers, found the sweet relish an impossible food ingredient. About three hundred and twelve cases of sandwich spread were returned to plaintiff by his customers in a state of fermentation and quite a large quantity was thrown into the garbage by plaintiff's customers and plaintiff was compelled to refund in cash, or to credit his purchasers, for all sales, $1,200 damages direct and proximate, because of defendant's breach of the contract in supplying an article below sample, and also negligently compounding in the sweet relish a dangerous ingredient which generated explosions causing far-reaching damage outside of the failure in sales of the sandwich spread. The jury returned a verdict in favor of plaintiff in the sum of $2,950.

Defendant timely moved the court to grant it a nonsuit and assigns a refusal thereof as error. Error is also predicated on the refusal of the court to grant defendant's motion for a directed verdict. These assignments of error raise practically the same question. Exceptions were reserved to the instructions of the court.

It is contended by defendant that where a buyer contracts to buy goods according to description or according to sample and whereupon delivery of the

goods by the seller, the buyer tests the tendered goods and discovers that they do not conform to the description or sample, but nevertheless proceeds to use the goods, the buyer cannot recover consequential damages for injuries resulting from such use.

The plaintiff relies upon an exception to the rule, that acceptance does not preclude the buyer from recovering damages for breach of a warranty. Under the rule of *Feeney & Bremer Co. v. Stone,* 89 Or. 360 (171 P. 569, 174 P. 152), nor does the buyer's use of an article constitute a waiver of performance by the seller when accepted under protest and objection that it does not fulfill the contract, as in this case: *Austin Co. v. Tillman,* 104 Or. 541 (209 P. 131, 30 A. L. R. 293).

Or. L., § 8178, provides that there is an implied warranty:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed.

\*          \*          \*          \*          \*

"(6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

■ The purchaser's use of an article, unlike that described in the contract of sale, constitutes a waiver

of performance by the seller only in case where it is accepted as a complete performance and not when accepted under protest and objection that it does not fulfill the contract. *Austin Company v. Tillman,* supra.

The acceptance by plaintiff of the article delivered by defendant was not of the character contemplated by the rule providing it should constitute a waiver. The defect in the goods was a latent one that could not be detected upon examination, except by an expert chemist, if it could so be done. The only examination, or test, made of the goods delivered by defendant to plaintiff was made by defendant's chemist. The plaintiff did not employ a chemist and did not possess a laboratory for chemical analysis. This was not expected or warranted by his volume of trade. He was not an expert chemist.

■ The testimony tended to show that plaintiff made use of some of the sample barrel of "sweet relish" in compounding it for sandwich spread and that there was no fermentation of the article; that he used the same formula and the same ingredient for mayonnaise with the other shipments of sweet relish to make sandwich spread and unlike that made with the sample, it fermented and spoiled and burst the bottles, injuring other goods of his customers and was unfit for human consumption; that he used the same kind of mayonnaise with Knight's Sweet Relish both before and after he used the product purchased of defendant and had no trouble with fermentation.

There was sufficient evidence to take the case to the jury.

There was no error in denying defendant's motion for a nonsuit and motion for a directed verdict for defendant.

■ As to the defendant's claim that plaintiff used the products after he was satisfied it did not conform to the contract, the testimony shows that the defendant's agent, who made the contract with plaintiff, after one shipment had been returned to defendant, and plaintiff had complained of a later shipment, and the agent of defendant had inspected the product, said to plaintiff, "I wish you would make some arrangement whereby you can use this." "You go ahead and pick that (coarse red pepper peeling) out and we will make it right with you."

The defendant ought not to complain because plaintiff did exactly as it requested, after defendant's chemist tested the goods and it had made an examination of the same.

How can defendant contend that plaintiff waived any of its rights or remedies by accepting the goods after he examined the same when he did exactly as defendant requested and urged, moreover, the defect in the sweet relish was a latent one and could only be detected by an expert.

Plaintiff was not a chemist and could not be expected to know whether or not the goods corresponded to the sample or were merchantable, until they had been tested by use. Defendant had a chemist and was in a different position than plaintiff, when it requested plaintiff to use the second shipment, and promised plaintiff that all future shipments would conform to the sample. The method pursued was that of defendant's. Plaintiff did not know that the sweet relish would cause fermentation or explosion until he used it in making sandwich spread and sold the same to his customers, after which there was a "popping" to plaintiff's damage. Plaintiff relied upon defen-

dant's agreement, skill and judgment: *Universal Motor Co. v. Snow*, 149 Va. 690 (140 S. E. 653, 59 A. L. R. 1174). We take from defendant's brief the following:

The general rule is stated in *Feeney & Bremer Co. v. Stone,* 89 Or. 360 (171 P. 369, 174 P. 152), wherein the court at page 369 says:

"When the seller of personal property has breached his express warranty, to furnish an article of a specified kind, quality or condition, he is liable as in the case of any other kind of a contract, for both general and special damages.  *  *  *  The acceptance of the property does not of itself preclude the buyer from recovering damges.  *  *  *  as in other contracts, the buyer owes an active duty to exercise ordinary care to keep the damages as low as possible.  *  *  * The theory of the law is to award compensation for gains prevented and for losses sustained. The party who is damaged by the breach of a contract is not prevented from recovering anticipated profits merely because they are such. If it is reasonably certain that the breach of a contract has deprived the complaining party of a profit which was contemplated or can reasonably be presumed to have been contemplated by the parties at the time the contract was made then the party committing the breach is liable for the loss of the profit."

Plaintiff exercised the care directed by defendant as found by the jury. It was not the fault or negligence of plaintiff that caused the damage.

■ The testimony herein brings the case within the purview of subdivision (1) of section 8178, Or. L. The two requisite things appear: first, the seller was informed expressly of the purpose for which the sweet relish was purchased; second, the buyer relied on the seller's skill and judgment: *Thomson v. Meyercord Co.,* 174 N. Y. S. 732, 733; Uniform Laws Ann. vol. 1, p. 66.

As to the examination of the goods by plaintiff, the jury must have thought that it was absolutely impossible for such examination to have revealed the defect afterward developed.

The testimony indicated that defendant offered to duplicate the Knight's Relish, which plaintiff had theretofore been using. It did not do so, and did not furnish plaintiff with the goods as it agreed: *Austin-Co. v. Tillman Co.,* 104 Or. 541 (209 P. 131, 30 A. L. R. 293); *Feeney & Bremer Co. v. Stone,* supra; see also *Swift & Co. v. Redhead,* 147 Iowa 94 (122 N. W. 140).

■■. Appellant claims that Rhodes, the plaintiff, as a witness, was not qualified as an expert to testify that the containers burst by reason of fermentation. After the sweet relish had been used and it was found that the product fermented it was not essential that an expert testify to the same. When no scientific knowledge was required, and the question of the fermentation of food in jars, or containers, which any housewife would be likely to know about, an ordinary witness may testify in regard to a matter of which he has cognizance.

The court charged the jury in accordance with the law. Exceptions were reserved by defendant to the instruction, but we find no error therein. The case was fairly presented to the jury.

The questions in the case were in regard to the facts which were in issue and are settled by the verdict of the jury.

We find no error in the record. The judgment is affirmed.

Coshow, C. J., and Belt, J., concur.