## CHILDS DINING HALL COMPANY v. JULIA SWINGLER

[No. 31, October Term, 1937.]

*Decided January 14th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Douglas N. Sharretts* and *Rignal W. Baldwin,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellant.

*Albert A. Sapero,* for the appellee.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from a judgment against Childs Dining Hall Company, a body corporate, operating a chain of restaurants in the City of Baltimore, in favor of Julia Swingler, plaintiff below and here the appellee.

The questions presented for our consideration by this appeal arise on the ruling on a demurrer to a second amended declaration, and on prayers offered at the conclusion of all the testimony. Demurrer prayers offered at the end of the plaintiff's case were refused as to Childs Dining Hall Company and granted as to Ward Baking Company, originally one of the defendants. Demurrer prayers were re-offered by the appellant at the conclusion of the testimony on both sides, and were refused. There is an exception to the granting of a prayer submitting the case on the theory of an implied warranty that the food supplied was "fit for human consumption" and that, if it was found by the jury that the food when served contained foreign substances and was unfit for human consumption and the plaintiff was injured thereby, the plaintiff was entitled to recover; and an exception to the rejection of another prayer of the defendant designed to refute the theory of an implied warranty. Thus the questions here involved are clearly presented by these rulings on the demurrer to the declaration and on the prayers.

The facts are few and simple and there is no dispute about them. The principal question for our consideration has never been passed upon in this state, and has been the subject of great controversy in numerous jurisdictions and of much diversity of opinion by learned jurists and writers throughout the country.

The plaintiff entered a restaurant of Childs Dining Hall Company. She was directed by an employee to a table and ordered a crab cake sandwich, and then proceeded to eat her lunch. When she had about finished, while eating a "small portion of bread," a piece of tin, one-eighth inch by one-half inch, was driven into her gum between her teeth, whereby she was injured. She states that: " * * * the hostess met me at the door and escorted me to a seat. The day was rather warm, and I ordered a crab-cake sandwich on rye bread and a glass of beer. I had consumed all the sandwich but a small portion. I had an appointment for half-past two, and I had plenty

of time, so I just sat there, and I had a small portion of the beer left in the glass, and a small portion of the bread of the sandwich, and for some reason or other, I bit down on this object, which caused an excruciating pain and made me rather sick, and I put my hand over my mouth —I don't know whether the waitress noticed me, but I know she asked me if anything was wrong, and I told her I had something in my tooth, and I felt pretty ill and I asked for the lavatory, and she showed me to the steps, and immediately the hostess came down behind me and went with me to the lavatory. I had food in my mouth and, of course, I did not speak very plainly, and she helped me to dislodge this object."

The original declaration was laid in tort and charged the defendant, the appellant here, and Ward Baking Company, the manufacturer of the bread, with want of due care and negligence. The amended declaration changes the form of action from tort to an action of assumpsit and alleges that: " * * * the plaintiff entered the restaurant of one of the defendants herein, the Childs Dining Hall Company, sometimes known as Childs Company, a body corporate, and ordered a crab-cake sandwich, and while eating the bread, baked and manufactured by the defendant, the Ward Baking Company, a body corporate, which was served by the employees of the Childs Dining Hall Company, sometimes known as Childs Company, a body corporate, the plaintiff bit into a piece of tin, which was attached to and lodged in the bread and unseen by the plaintiff, and was thereby painfully injured about her teeth, gums, and upper roof of her mouth; that the relationship and manner of dealing with the plaintiff as a customer in the purchase and use of said sandwich justified her in the belief that it was free from hidden and dangerous articles and that said crab-cake sandwich, ordered and purchased by the plaintiff, was impliedly represented or warranted by the defendants as to quality and fitness for use, and to be non-injurious to the health of the plaintiff and free from any foreign substance and fit for human consumption; that as a result of said in-

juries, the plaintiff was confined to her bed and was compelled to have extracted two (2) teeth, following an abscess caused from said injuries; and the plaintiff further says that she has suffered serious and permanent injuries to her teeth and is still suffering from said injuries, and has expended considerable monies for medicines, medical and dental bills, and has lost part of her means of a livelihood in being unable to practice her profession as a nurse."

The question now presented, as conceded by both parties, is whether the restaurant keeper, in the serving of food, gives an implied warranty to the customer that its food is wholesome, free from injurious substances, of merchantable quality, and fit for human consumption. This question is so close and so greatly controverted that cases only similar in character are not helpful as precedents. To illustrate, a sharp distinction is made between the supplying of food in a restaurant, to be immediately consumed on the premises (together with those accompanying services afforded by the proprietor), and with those cases where food is sold in containers, or otherwise, to be taken away and consumed at some other time and place, or with suits against manufacturers, each class of which cases are the subject of much litigation and difference of opinion. There are numerous cases and diversity of opinion as to foreign substances or poisonous conditions of food contained in sealed cans, as well as upon the question here presented. In the State of New Jersey it has been held by the Supreme Court that a retail dealer is responsible for an injury by poisonous or unwholesome food contained in a sealed package (*Griffin v. James Butler Grocery Co.*, 108 N. J. L. 92, 156 A. 636), but that a proprietor of a restaurant is not responsible under an implied warranty for the poisonous quality and injurious condition of food that he serves for immediate consumption in his place of business. *Nisky v. Childs Company*, 103 N. J. L. 464, 135 A. 805. The major difference of opinion arises out of the question whether in a restaurant one merely purchases a service, or enters

into a contract for the sale of food or merchandise. If the sale theory of the transaction prevails, and the implied warranty in consequence thereof is given, then the restaurant keeper or inn keeper becomes, in law, practically an insurer, and the proof required for a recovery is restricted to the payment for the service, including the furnishing of the food consumed on the premises, and the injury complained of. On the other hand, if what an inn keeper or restaurant keeper does is only the supplying of a service for certain compensation, the question is one of negligence.

The measures of damages in tort and on an implied warranty in most cases are different. It is contended on the part of the defendant (appellant) in this case that the damages to be recovered on a sale are only the difference in the value of the food contracted for and the value of the food delivered, which, in a case of this kind, is negligible, however serious the consequences and the personal injury. This question was presented by a prayer of the defendant, which was refused. We conceive the rule in a case like this to be not the difference in value of a good loaf and a bad loaf, but fair compensation for the injury occasioned. *Ryan v. Progressive Stores*, 225 N. Y. 388, 175 N. E. 105, 107, where the learned Justice (Cardozo) stated: "The argument is made that the only damage to be recovered for the breach of the warranty of merchantable quality is the price of the bread, the difference between the value of a good loaf and a bad one. The rule is not so stubborn. Undoubtedly, the difference in value supplies the ordinary measure. * * * The measure is more liberal where special circumstances are present with proof of special damage. * * * Here the dealer had notice from the nature of the transaction that the bread was to be eaten. Knowledge that it was to be eaten was knowledge that the damage would be greater than the price."

In other words, the latter view is to give to a plaintiff substantially the same measure of damages for a breach of the alleged warranty as is given in an action for

negligence. These, and many kindred questions, because of the changed order of things in the distribution of food, are being constantly asserted in the courts, but on this appeal it seems to us that the single question presented is: Does the supplying of food in a restaurant constitute a sale, under the Uniform Sales Act, art. 83, sec. 36, or under the common law, carrying an implied warranty, or is it, as contended by the appellant, merely the supplying of a service incident to which is the serving of food, and that no implied warranty is given, and that the restaurant proprietor or inn keeper is only liable in case he does not exercise due care and is guilty of negligence?

Leading cases supporting the theory of an implied warranty are that of *Friend v. Childs Dining Hall Co.*, 231 Mass. 65, 120 N. E. 407, also *Smith v. Gerrish*, 256 Mass. 183, 152 N. E. 318, and *Temple v. Keller*, 238 N. Y. 344, 144 N. E. 635. These cases directly hold, and are followed by others, that, where the case is in assumpsit, there is an implied warranty, derived from the very nature of the transaction, and that the proof required is only such facts as ordinarily arise in the procuring of a meal in the usual way in a restaurant or inn, and the unwholesome condition of the food, causing injury to the plaintiff; the law foregoes further or additional proof by implying a warranty and so the case goes to the jury, and the restaurant keeper becomes, in effect, an insurer. This theory is vigorously assailed in many cases. The Uniform Sales Act does not afford any considerable aid in this matter, because this act is only declaratory of the common law. *Luria Bros. & Co. v. Klaff*, 139 Md. 586, 115 A. 849.

In a review of the cases holding to the theory of implied warranty, which makes the restaurant keeper, for the most part, an insurer of the merchantable quality and wholesome condition of his food, we find New York, Massachusetts, and other states so holding. *Friend v. Childs Dining Hall Co.*, 231 Mass. 65, 120 N. E. 407, opinion by Rugg, C. J. Crosby, J., dissented, taking the

view that restaurant keepers do not so impliedly warrant, and the clean cut issue between implied warranty on the one hand, and express warranty or knowledge of the foreign substance or ingredient, or negligence, on the other hand, is there presented. In further support of the theory of implied warranty, we find *Leahy v. Essex Co.*, 164 App. Div. 903, 148 N. Y. Supp. 1063; *Rinaldi v. Mohican Co.*, 171 App. Div. 814, 157 N. Y. Supp. 561; also annotation to *Friend* case, 5 *A. L. R.* 1115; *Temple v. Keeler*, 238 N. Y. 344, 144 N. E. 635; *Kress & Co. v. Ferguson* (Tex. Civ. App.) 60 S. W. [2nd] 817; *Bernstein v. Jockey Club*, 222 App. Div. 191, 225 N. Y. Supp. 449; *West v. Katsafanas*, 107 Pa. Super. 118, 162 A. 685; *Cushing v. Rodman*, 65 App. D. C. 258, 82 Fed. (2nd) 864, 871, Stephens, J., a well considered opinion. Among the many decisions supporting this theory is the leading case of *Ward v. Great Atlantic & Pacific Tea Co.*, 231 Mass. 90, 120 N. E. 225, with numerous citations, but this case relates to the sale of canned beans in which a small pebble was found, and which injured and broke a tooth, and is easily distinguished from the one at bar. The food was not for immediate consumption on the premises, and therefore the doctrine of service instead of contract could not be applied. The sale was complete. This case is basis for an article in 34 Mich. Law Rev., p. 494.

In *Sloan v. Woolworth Co.*, 193 Ill. App. 620, relating to the purchase of a can of herring, taken from the place of business of the seller, later eaten—the result was ptomaine poison. The court, in that case, held there was a warranty of wholesomeness by the retailer. In *Griffin v. Butler Grocery Co.*, 108 N. J. L. 92, 156 A. 636. canned peaches were sold, and were eaten at the home of the purchaser. Those who ate the peaches became ill; those who did not were not affected. It was held that the doctrine of implied warranty applied. To the same effect is the case of *Bowman v. Woodway Stores, Inc.*, 258 Ill. App. 307. *Gimenez v. Great Atlantic & Pacific Tea Co.*, 264 N. Y. 390, 191 N. E. 27, relates to the purchase of a can of crab meat from a retailer, not for consumption

upon the premises. The case of *Meyer v. Kerschbaum*, 133 Misc. 330, 232 N. Y. Supp. 300, related to a case where there was a carpet tack in some sugar buns. The plaintiff was injured thereby, and a recovery was allowed, the court holding that there was an implied warranty, and for authority the case of *Holt v. Mann* (Mass.) 200 N. E. 403 was cited.

In the case of *Cleary v. National Stores*, 291 Mass. 172, 196 N. E. 868, the doctrine of implied warranty as between immediate parties was recognized, but it was held that other parties injured by the goods sold were not entitled to recover, unless there was evidence of negligence. See, also, *Flaccomio* case (*Flaccomio v. Eysink*), 129 Md. 367, at page 379, 100 A. 510, 513. Further developing this question, it has been held that a customer entering a restaurant, eating and paying for his order, impliedly makes known to the vendor the particular purpose for which the article is required. And so this implied warranty is recognized in numerous other cases, and has been applied to almost every kind of food and to the presence of foreign substances in containers or in the food. See *Rhodes v. Libby*, 133 Or. 128, 288 P. 207; *Hubbard v. Rockaway Lunch Co.*, 131 Misc. 53, 225 N. Y. Supp. 638. And in early times in England the principle was thus stated: "If I go to a tavern to eat, and the taverner gives and sells me meat and it is corrupted, whereby I am made very sick, action lies against him without any express warranty for there is a warranty in law."

This doctrine of implied warranty is recognized and defined in *Cushman v. Rodman, supra,* wherein a restaurant owner who served a roll not manufactured or baked by him, with a pebble therein, whereby a customer was injured, was held liable for breach of an implied warranty and consequential damages. The court there said: "We conclude that upon the service of food for a consideration and for immediate consumption upon the premises of the seller, but which food was not prepared by the seller but purchased elsewhere and the defect in which was not dis-

coverable except by destroying the marketability of the article, there is an implied warranty that the food is wholesome, for breach of which an action lies for the recovery of consequential damages."

In 55 *C. J.* sec. 866, p. 888, it is said: "A recovery may be had for personal injuries in an action upon a breach of warranty, where such injuries are the natural and probable result of the breach, and such as were within the contemplation of the parties, and it has been further held that damages for personal injuries are recoverable, although there was no fraud in the warranty."

And so continue the authorities upon this question, as shown in the cases cited, and in many others, supporting the theory of contract and implied warranty.

Some consideration, in this opinion, should be briefly given to subsections (1) and (2) of article 83, section 36, of the Uniform Sales Act, as it relates to implied warranty. These sections read as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

It is beyond argument that the restaurant keeper knew or understood the purpose for which the food was required and that she relied upon him to supply to her food safe for human consumption and of merchantable quality. There is nothing in the Sales Act which interferes with the application of that rule, provided there is a sale within the meaning of the act. In 55 *C. J.* sec. 733, p. 764, "*Sales,*" it is stated that: "It is the general rule that where the sale is for immediate consumption,

there is an implied warranty that the food is wholesome and fit for the purpose," and in the case of *Ryan v. Progressive Grocery Stores*, 255 N. Y. 388, 175 N. E. 105, the eminent jurist in his opinion in that case makes numerous observations relating both to the right of recovery and to the measure of damages, upon the theory of implied warranty. This statement seems to have been predicated on the authority of the New York and Massachusetts cases.

There are many decided cases holding against the theory of an implied warranty, and adopting the principle that one merely purchases a service when he enters a restaurant or inn to obtain food or drink, to be served on the premises, with the accessories and surroundings ordinarily found ·in such eating places; and to enable a plaintiff to recover in cases such as this there must be an express warranty, or knowledge of the unmerchantable quality of the food, or negligence.

In support of this theory, Judge Augustus N. Hand, in *Valeri v. Pullman Co.* (D. C.) 218 Fed. 519, 524, stated that: "There is no well-considered authority and no public policy which afford any justification for imposing upon the defendant the absolute liability of an insurer of its food, and I deem that the only obligation of the defendant, or any keeper of a restaurant or inn, is to exercise the reasonable care of a prudent man in furnishing and serving food."

In the case of *Horn etc. Baking Co. v. Lieber*, (C. C. A.) 25 Fed. (2nd) 449, which involved a tack in strawberries served in a public restaurant, opinion by Judge Buffington, it was said: "We are clear that, under the authorities, an inn keeper is not the insurer of food, but his duty is that of exercising due care in the furnishing and serving thereof."

In *Merrill v. Hodson*, 88 Conn. 314, 91 A. 533, it was held that a restaurant keeper's service of food for immediate consumption was not a sale of goods, and that an implied warranty that the merchandise sold was reasonably fit for the purposes for which it was ordered would

not apply. This was on the ground that, in ordering food in a restaurant, to be consumed on the premises, the patron does not become the owner of the food, but only of the privilege of consuming what he wishes of it. It would follow, therefore, unless there was negligence or an express warranty on the part of defendant or his servants, there could not be a recovery. The theory of an implied warranty could not support the action.

In the case of *Woolworth Co. v. Wilson* (C. C. A.) 74 Fed. (2nd) 439, Judge Sibley, discussing the right of a plaintiff to recover upon an implied warranty against the defendant on a mere showing that she was injured by glass in ice cream served her at a soft drink counter, and referring to the leading cases holding such transactions to be a sale, said tort, and not implied warranty of fitness and quality, was the controlling principle, and, "We find the better reasons to be not with the decisions in Massachusetts and New York, but those refusing to follow them." Evidently the cases referred to by the learned judge were *Friend v. Childs Dining Hall Co.*, 231 Mass. 65, 120 N. E. 407, and *Temple v. Keeler*, 238 N. Y. 344, 144 N. E. 635. It is well recognized and established that in New York, Massachusetts, and other states the doctrine of implied warranty has been adopted.

The contrary view, however, is supported in the cases of *Hooper Café Co. v. Henderson*, 223 Ala. 579, 137 So. 419; *McCarley v. Wood Drugs*, 228 Ala. 226, 153 So. 446; *Stell v. Townsends etc. Fruit*, 138 Cal. App. 777, 28 P. (2nd) 1077, relating to spoiled fish; *Corin v. Kresge Co.*, 110 N. J. L. 378, 166 A. 291, relating to glass in cole slaw; *Wilson v. Moore* (La. App.), 159 So. 399, relating to spoiled cocoanut cream pie; *Rickner v. Ritz Restaurant Co.*, 181 A. 398, 13 N. J. Misc. 818; *Loucks v. Morley*, 39 Cal. App. 570, 179 P. 529; *Rowe v. Louisville & Nashville R. Co.*, 29 Ga. App. 151, 113 S. E. 823; *Sheffer v. Willoughby*, 163 Ill. 518, 45 N. E. 253; *Wiedeman v. Keller*, 58 Ill. App. 382; *Travis v. Louisville & Nashville R. Co.*, 183 Ala. 415, 62 So. 851; *Greenwood Cafe v. Lovinggood*, 197 Ala.. 34, 72 So. 354; *Merrill v. Hodson*, 88

Conn. 314, 91 A. 533; *Bigelow v. Maine Cent. R. Co.,* 110 Me. 105, 85 A. 396; *Valeri v. Pullman Co.* (D. C.) 218 Fed. 519; *Benjamin on Sales* (4th Ed.) 671; *Kenney v. Wong Len,* 81 N. H. 427, 128 A. 343; *Horn & Hardart Baking Co. v. Lieber,* (C. C. A.) 25 Fed. (2nd) 449; *Rowe v. Louisville & N. R. Co.,* 25 Ga. App. 151, 113 S. E. 823; *Lynch v. Hotel Bond Co.,* 117 Conn. 128, 167 A. 99; *Nisky v. Childs Co.,* 103 N. J. L. 464, 135 A. 805. See, also, dissent in *Friend v. Childs Dining Hall Co., supra; Roseberry v. Wachter,* 3 W. W. Harr, 253, 33 Del. 253, 138 A. 273.

And thus we see the conflict of views coming from the highest judicial authority in many states. In Maryland the precise question has never been before this court. There are two Maryland cases dealing with the liability of persons supplying foods or beverages containing foreign or injurious substances or ingredients. Both of these cases are actions in tort. *Flaccomio v. Eysink, supra,* was an action brought against the immediate vendor or retailer, in which he was charged with selling whisky adulterated with wood alcohol and selling it as pure whisky. The suit was instituted against both Flaccomio and Lee Sonneborn. The court, in laying down the principle governing a case of that character, said: "In the absence of some evidence that Sonneborn or his agents knew of the presence of wood alcohol, or of some evidence of fraud, deceit, or negligence on his or their part, there is no ground or principle upon which he could be held liable under the pleadings in the case for the injury the plaintiff sustained." The correctness of this statement is obviously beyond dispute. That case was an action in tort, and the right to recover, therefore, must have been predicated upon fraud, deceit, or negligence, and evidently such did not appear in the testimony.

The case of *Goldman & Freiman Bottling Co. v. Sindell,* 140 Md. 488, 117 A. 866, was an action in tort for negligence, in which the defendant was charged with negligently manufacturing and selling to a retailer a bottle

of beverage called "Whistle," containing portions of glass, which cut his throat as he was drinking it, in consequence of which he became ill and suffered damages. The suit was against Goldman & Freiman Bottling Company, manufacturers and distributors of the beverage. This being an action in tort against a manufacturer for negligence in manufacturing and distributing a drink for human consumption, in a sealed bottle, containing fragments of glass, the doctrine of implied warranty could not have been invoked, and the distinction between these cases and the case at bar is obvious and affords us no direct precedent in arriving at a conclusion in this appeal. But these cases, while entirely dissimilar in the form of action employed, do deal with food adulterations, injurious ingredients, and foreign substances, and they do establish the right to sue and to recover in an action of tort, where proof of negligence, knowledge of such adulterations, injurious or foreign substances, were known to the seller or manufacturer.

Further consideration of the *Flaccomio* and *Goldman & Freiman Bottling Company* cases shows that this court expressly adopted the language in *Crigger v. Coca-Cola Bottling Co.*, 132 Tenn. 545, 179 S. W. 155, 157, relating to foreign substances in food or drink, injurious to health or safety, where it was said: "This liability is based on an omission of duty or act of negligence, and the way should be left open for the innocent to escape. However exacting the duty or high the degree of care to furnish pure foods, beverages, and medicines, we believe with Judge Cooley, as expressed in *Brown v. Marshall, supra,* (47 Mich. 576, 11 N. W. 392), that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is no logical basis of liability for personal injury without some negligent act or omission."

This doctrine that a manufacturer of goods is not an insurer was restated in the opinion of the learned judge in *Goldman & Freiman Bottling Co. v. Sindell, supra,*

140 Md. 488, at page 497, 117 A. 866, 869, where it was stated that: "The inquiry therefore is whether the presence of broken glass in the bottle at the time it was sold by the appellant was evidence of that negligence. In our judgment it was, and the law applicable to the facts of the case was clearly, accurately, and fully stated in the defendant's granted prayers, which devolved upon the jury the duty of determining from that and all the other evidence in the case whether the defendant had been guilty of the negligence charged in the narr."

Neither the above cases, nor the form of action employed in them, are the same as the case at bar, but these cases show the decided tendency in our state in dealing with cases of this character, not under the theory of contract, implied warranty and insurer, but under the theory of the want of due care and negligence. We hold that an action in tort in such cases as this affords to the injured person a convenient and adequate remedy, and disposes of the contention that the adoption of the negligence theory, rather than that of an implied warranty, would amount to a practical denial to those injured in cases from food adulteration, foreign substances or unmerchantable quality. The theory of implied warranty, as previously pointed out, denies to the restaurant keeper an adequate defense; for, where it can be shown that he has served unwholesome food upon his premises, the obligation of an insurer is imposed upon him regardless of the care and prudence he may have exercised.

In 5 *A. L. R.* 1115, 35 *A. L. R.* 922, 98 *A. L. R.* 687, 104 *A. L. R.* 1033, there is a summing up of the weight and effect of many cases, and the conclusion is reached and the position taken that the weight of authority, "judicially, at least, is to the effect that in the absence of statute, one serving food to be immediately consumed on the premises is neither an insurer of the fitness or wholesomeness of the food served nor liable upon an implied warranty."

In view of what we have said and of the judicial weight

of authority as it appears to us, we have concluded that there should be a reversal in this case.

A new trial will be awarded in order that the plaintiff may, if so advised, apply for leave to file an amended declaration, suing on the ground of negligence in the defendant, and proceed further on that theory.

*Judgment reversed and new trial awarded, with costs.*

BOND, C. J., filed a concurring opinion as follows:

The distinction between accommodation with food in a restaurant, inn, or boarding house, and sale of the same sort of food by a shopkeeper, has been observed in Maryland. An illustration is found in the statutory provision that keepers of hotels, boarding houses, inns, and ordinaries shall have a lien for the price or value of food furnished. Code, art. 71, sec. 7. It seems to be recognized, indeed, in common speech, in which food provided in a restaurant is referred to as served to guests rather than sold.

If this distinction in character be disallowed, and only the fact of transfer of property be regarded, there is, of course, no logical difficulty in viewing the supply of food as identical with the ordinary sale in a shop. Meals may be viewed as food sold, feeding a traveler's horse in the recent past would have been a sale of the feed. By a similar process material put into construction work by contractors or repairmen might be classed as material sold. See *State v. Christhilf*, 170 Md. 586, 185 A. 456. And so with the production of goods for a customer by work and labor; that might be classed as a sale. *Bagby v. Walker*, 78 Md. 239, 27 A. 1033; *Rentch v. Long*, 27 Md. 188. In all there is a transfer of property to the customer, and similarity enough to support a classification together as sales, if the usual distinctions be disallowed.

Disallowance is urged here as a means of providing for guests injured by substances in food an easier way

to recovery of their damages. The burden of proving negligence under the old rule is considered unjust to the guest because he would commonly have no access to the information needed to meet it, and because there is commonly no negligence on the restaurant keeper's part when he dispenses food provided for him by manufacturers, as the bread in this instance was provided. But, if to cure an injustice from that source resort is had to the classification of sale to bring the defendant under an implied warranty, we would seem to be curing one injustice by inflicting another, for the restaurant keeper could in many instances do nothing to comply with the warranty. When his supply comes from a manufacturer or special dealer he would be placed helpless under a new liability without fault. Frequently, in the increasing number of suits for injuries to guests, he is without information to test the charge in any part, for he hears of an accident for the first time in a threat of suit, and then has no recollection of the guest. If no more were required of a plaintiff than a statement of injury in the establishment from a substance found in the food, the keeper of a large restaurant would be an easy prey to imposition by false testimony.

I agree that there is no sufficient ground for imposing by judicial decision in this relation any other liability than that for failure to exercise due care. But, if that rule entails an intolerable burden of proof on the guest, then I venture the conclusion that a rule to attain equal justice should distinguish between cases in which the restaurant keeper does, and those in which he does not, prepare the food for serving, and perhaps some distinction should be observed in the extent of his handling, and of his opportunity to perceive any foreign substance present. And to avoid rendering him a prey to fraudulent claims, it might be necessary to provide that notice of injury be given in time to permit an investigation. The problem would then be one for legislation, I think.

OFFUTT, J., filed a dissenting opinion as follows, in which Urner, J., concurred.

Mrs. Julia Swingler, on the afternoon of May 30, 1936, ordered a crab sandwich and a glass of beer in a restaurant operated by the Childs Dining Hall Company at Charles and Fayette Streets, Baltimore, Maryland, which were served at a table in the restaurant. She had eaten all of the sandwich but a small piece of bread but, when she attempted to eat that, she bit down on a piece of tin an eighth of an inch wide and three-eighths or a half an inch long, which was imbedded in it. When she bit down on it, it became wedged between two of her teeth, it was removed with difficulty, an abcessed condition developed, and the tooth was extracted. In consequence of the injury she suffered considerably from pain and shock. To recover for those injuries she brought this action. The trial resulted in a verdict and judgment in her favor, and from that judgment the defendant appealed.

The original declaration sounded in tort and was based on the defendant's negligence. Later an amended declaration alleging an express warranty was filed, and at the trial, to meet the proof, a second amended declaration alleging an implied warranty was filed. Demurrers to both amended declarations were overruled.

At the conclusion of the whole case the defendant offered this demurrer prayer: "The Court instructs the jury that on the whole case there is no legally sufficient evidence to entitle the plaintiff to recover against the defendant and the verdict of the jury must, therefore, be for the defendant," which was refused. It also asked the court to instruct the jury by its D prayer that furnishing food to a customer by a restaurant keeper is not a sale, and that there is no implied warranty as to the "quality of the food," and by its 1 prayer that in such a case there is no implied warranty of either the quality or the fitness of the food. By its 2 prayer, also refused, it asked for an instruction that the burden of proof was upon the plaintiff to prove by a preponderance of the

evidence "any warranty" respecting the "quality or fitness" of the food served. Its Z prayer also refused related to the measure of damages.

Plaintiff's first and only granted prayer was based upon the hypothesis that when defendant sold the sandwich to the plaintiff it "impliedly warranted" that it was fit for human consumption.

The only exception found in the record relates to these rulings and to the court's instruction as to the measure of damages.

Defendant's 1 and 2 prayers were properly refused because they prescribed too high a standard of proof. Its Z, or damage, prayer was also properly refused because it limited the recoverable damages too narrowly. Code, art. 83, sec. 90, subsec. (6). The substantial question in the case is whether one who conducts a public eating place impliedly warrants to customers to whom he sells food to be consumed on the premises that it is fit to eat, or whether he merely furnishes services and is answerable only for a failure to exercise reasonable care in the performance of that service. That question is raised by the refusal of defendant's D prayer and the granting of plaintiff's first prayer.

Defendant's demurrer prayer made no reference to the pleadings, so that, if the evidence was legally sufficient to permit a recovery on any ground irrespective of the pleadings, it was properly refused, *Brady v. Brady*, 110 Md. 656, 659, 73 A. 567; *Brager v. Friedenwald*, 128 Md. 8, 29, 97 A. 515; *Balto. & O. R. Co. v. Walsh*, 142 Md. 230, 237, 120 A. 715; *Maryland Apartment House Co. v. Glenn*, 108 Md. 377, 385, 70 A. 216. So that the question which it raises is whether upon all the evidence in the case the plaintiff was entitled to recover, either for a breach of warranty or for negligence.

There are therefore two questions in the case, one, whether a restaurant keeper who furnishes for profit food to a patron to be consumed on the premises is liable for harm caused to the patron by some noxious quality or defect in the food, on the theory that the transaction

constituted a sale with an implied warranty of fitness, or on the theory that such a transaction is not a sale of goods but a hiring of service, and that the restaurant keeper is only liable for a failure to exercise ordinary care to see that the food is fit to eat. The second question is, whether, if the transaction was one of service, negligence may be inferred from the fact that the food was noxious or otherwise dangerous to human health, in other words, whether the doctrine of *res ipsa loquitur* is applicable.

The consideration of both theories has to some extent been affected by a humane solicitude for the plight of that legendary person, the poor boarding house keeper, who might be financially ruined by the fortuitous appearance in food furnished a patron of matter in which the processes of decay have gone too far, or of some alien substance such as broken glass, or a shell, a pebble, a splinter of wood, or a button.

Consequently the authorities are not at all in harmony as to whether the transaction is a sale or a hiring. The cases which hold that it is a sale for the most part emphasize the protection of the public, those which hold that it is a service emphasize the protection of the boarding house or restaurant keeper. And, while that distinction is a late flowering of the ancient judicial device of assuming a fiction as a predicate to escape the harshness of a literal application of the common law, it has this practical effect. If the transaction is a sale, then under the Uniform Sales Act the restaurant keeper who knows that the food is sold to be eaten impliedly warrants that it is fit to eat. If it is not fit to eat and harm is caused thereby, he is liable, so that in such a case the plaintiff need only prove the sale, the noxious or harmful character of the food, and that he suffered harm thereby. The literal application of that principle would in effect make the restaurant keeper a guarantor of the wholesomeness of the food he sells, and some judges and some courts have felt that it imposes too severe a burden on one who has exercised reasonable care and prudence and

diligence in the selection and preparation of the food he sells. It is true that he could avoid liability by giving notice to patrons that he did not warrant the quality of the food sold. But, if he announced that "The management makes no representation as to the fitness or wholesomeness of the food sold in this restaurant and patrons will consume the same at their risk," while the announcement would truly state the rule approved by the majority, it might and probably would have a depressing effect on his business, and the remedy might prove to be quite as bad as the disease.

On the other hand, if the transaction is held to be one of service, the patron who does not buy the raw material, and happily knows nothing of its preparation, manifestly could rarely if ever prove what he must prove to recover for harm caused by the bad food, that the restaurant keeper or his employees were guilty of negligence in inspecting, purchasing, or preparing it, unless negligence may be inferred from the mere fact that the food is dangerous to human health.

In truth, the transaction embraces elements both of sale and service, just as countless other transactions involving the furnishing of goods do. In so far as the actual goods are concerned it would seem to be a sale, since the patron may wholly consume the food which he orders. In so far as setting the table, cooking the food, and placing it on the table in appropriate dishes, it is one of service. If one buys an oil burner, or a radio, or a kitchen range, to be installed, it could not well be denied that the transaction is a sale, although service furnished by the vendor makes the goods sold available for use. So, if one buys a sandwich to be taken out of a restaurant, it seems well settled that the transaction is a sale, but, if he buys it to eat at a table in a restaurant, there are cases which hold that it is not a sale but a service. In other words, under that theory, if one is poisoned by bad food which he takes out of the restaurant, he may recover because he may rely upon the implied assurance that it is fit to eat, but, if he is poisoned

by bad food that he buys in a cafeteria and carries to a table himself in dishes which he has in part selected, it is not a sale and he may be poisoned with impunity. That distinction seems to me too filmy and tenuous for the rough usage of actual life in a practical world. A sale is defined in the Uniform Sales Act, Code, art. 83, sec. 22, as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration."

Whether a transaction in which a victualler furnishes food to a patron is a sale within that definition is differently answered by two of the leading legal compendiums. By one it is said: "Food served in eating house. There is also held to arise an implied warranty of fitness for human consumption in the cases of food served to a guest in an eating house, although the food served has been kept in air-tight casings, but other jurisdictions refuse to apply this rule, especially in the case of canned goods, founded historically on the notion that an inn keeper does not sell but utters provisions, and that it is the service that is predominant while the passing of title is merely incidental so that there is no sale." 55 *C. J.* 766. On the other hand, it is stated in 23 *R. C. L.* 1203: "The common transaction between an inn keeper or a restaurant keeper and his customer under which the latter is furnished with food to consume on the premises is not a sale."

One of the earliest expressions on the subject is found in *Parker v. Flint,* 12 Mod. 255, 88 Eng. Rep. 1303, in a remark by Wright, Serjeant, that an "inn keeper does not sell but utters provisions." That thesis was elaborated in *Merrill v. Hodson,* 88 Conn. 314, 91 A. 533, where, by a highly artificial process of reasoning, the court reached the conclusion that the sale of food by a restaurant keeper is not a sale of goods at all, that the patron gets no title to the food until he has eaten it, because, it is said, the customer pays not for food but for the right to satisfy his appetite. The English court in *Parker v. Flint, supra,* used the expression quoted in determining whether a statute directing that constables

should quarter soldiers "upon inn keepers * * * " applied to one who kept merely a boarding house, and was, as pointed out in *Friend v. Childs Dining Hall Co.*, 231 Mass. 65, 120 N. E. 407, 409, not regarded in England as inconsistent with the rule that an inn keeper warrants that food furnished his customers is wholesome.

It is true that in many cases the statement is loosely made that the customer does not become the owner of the food served him in a restaurant, 23 *R. C. L.* 1203, note 5; *Ann. Cas.* 1916 D, 917; *L. R. A.* 1915 B, 481, but that statement appears to lack substance and reality.

Where an inn keeper furnishes food merely as an incident of a general contract to board and lodge, the food which the patron does not consume may well be said to belong to the inn keeper, because his contract is only to supply the patron with such food as he needs or desires, but, where the patron orders specific articles of food and pays for them, it is inconsistent with both common sense and the realities of the situation to say that he does not own them. Professor Williston throws doubt on the analogy of the two cases when he says: "Whether this analogy holds good in a restaurant where a customer pays not for a meal, but for a definite portion of food, may perhaps be questioned. May not one who secures and pays for a piece of pie at an 'automat' or luncheon spa take it from the plate and walk off with it without wrong? Whether or not because the transaction has been held not to be a sale, it has generally been assumed that the liability of a restaurant keeper is based only on willful fault or negligence, and many cases have been brought on this assumption. In most of them no contention was made by the plaintiff that the defendant was absolutely liable as a warrantor, but in a few recent cases the claim was made on behalf of the plaintiff and denied by the court. The Massachusetts Supreme Court and the Appellate Division of the New York Supreme Court, however, have recently upheld such a claim, and with good reason." *Williston on Sales*, sec. 242 b. See also, *Vold on Sales*, ch. 6, sec. 153, p. 477. It would seem incredible that one

who ordered in a restaurant a sandwich to be served at a table, but after it was served changed his mind and took it away with him, could be convicted of larceny, if he had in fact paid for it, and yet, if he did not own it, that would be the logical result.

In *Friend v. Childs Dining Hall Co.*, *supra*, Chief Justice Rugg, speaking for the court in holding that such a transaction amounted to a sale and warranty, said: "It would be an incongruity in the law amounting at least to an inconsistency to hold with reference to many keepers of restaurants who conduct the business both of supplying food to guests and of putting up lunches to be carried elsewhere and not eaten on the premises, that, in case of want of wholesomeness, there is liability to the purchaser of a lunch to be carried away founded on an implied condition of the contract, but that liability to the guest who eats a lunch at a table on the premises rests solely on negligence. The guest of a keeper of an eating house or inn keeper is quite as helpless to protect himself against deleterious food or drink as is the purchaser of a fowl of a provision dealer. The opportunity for the inn keeper or restaurant keeper, who prepares and serves food to his guest, to discover and provide against deleterious food, is at least as ample as is that of the retail dealer in foodstuffs. The evil consequences in the one case are of the same general character as in the other. Both concern the health and physical comfort and safety of human beings. On principle and on authority it seems to us that the liability of the proprietor of an eating house to his guest for serving bad food rests on an implied term of the contract and does not sound exclusively in tort, although of course he may be held for negligence if that is proved. * * * Even if there were no common law authority (which there is, as already pointed out), it would not be practicable to establish a distinction upon this point which could be supported in reason, between the liability of a retail dealer in meat for immediate consumption and of a victualer who serves food to guests to be eaten forthwith at his own table.

Every argument which supports liability of the former tends to sustain liability of the latter with at least equal cogency. They appear to us to rest upon the same footing in principle."

And in the course of the same opinion it is said:

"It is ancient law that when one resorts to a tavern, inn or eating place, there for a consideration to be served with food for immediate consumption, and is received as a guest by the keeper, a duty is implied that the food shall be fit to eat. It has been said that: 'If a man goes into a tavern for refreshment, and corrupt drink or meat is there sold to him, which occasions his sickness, an action clearly lies against the tavern keeper; * * * an action lies against him without express warranty for it is a warranty in law.' Keilw. 91, [72 Eng. Reprint, 254]; *Burnby v. Bollett,* 16 M. & W. 644, 646, 647, 654 [153 Eng. Reprint, 1348], where are the references to numerous older cases. 'A taverner or vintner was bound as such to sell wholesome food and drink.' *Ames, Lectures on Legal History,* p. 137, citing also cases from the Year Books. 'If a man sells victuals which is corrupt without warranty an action lies, because it is against the Commonwealth. *Rosevel v. Vaughan, Cro. Jac.* 196, 197 [79 Eng. Reprint, 171]. To the same effect in substance, are 1 *Rolle, Abr.* 95, 1 *Fitzherbert's Natura Brevium,* 94 C, note, supposed to be by Lord Chief Justice Hale, 1 *Blackstone's Com.* 430, and 3 *Blackstone's Com.* 166. See *Williston on Sales,* sec. 241, note 82; *Farrell v. Manhattan Market Co.,* 198 Mass. 271, 84 N. E. 481. The relation between guest and host in a public house is one of contract. It seemingly is the result of those early authorities that it was an implied term or condition of that contract that the food and drink furnished should not be harmful, but appropriate for eating. * * * The historical review, the principles discussed and the ground of decision in *Frost v. Aylesbury Dairy Co.* (1905) 1 K. B. 608, 613, 614, (although that case arose under the Sales of Goods Act), affords basis for the conclusion that it has continued to be the law of England to the present. At

all events there is nothing to indicate that this common law rule was changed in England before the emigration of our ancestors to the new world."

In *Temple v. Keeler*, 238 N. Y. 344, 144 N. E. 635, 35 *A. L. R.* 920, it was said: "We have not before held that the owner of a restaurant sells the food which he provides for his guests. Indeed, in *Race v. Krum*, 222 N. Y. 410, 118 N. E. 853, we refused to pass upon the precise question as not then before us. Yet we cannot logically differentiate the facts there involved from those in the case at bar. Miss Temple enters a restaurant, orders a portion of fish which the jury might find was unwholesome, receives it, eats it, pays for it, and later becomes ill, it may be inferred, as the result. Mr. Race enters a drug store, orders a portion of ice cream which was unwholesome, receives it, eats it, pays for it, and later becomes ill as a result. This, we said, was a sale. * * * Apart, however, from *Race v. Krum*, we would still be compelled to reach the same result by an authoritative decision. Even in construing a criminal statute we have held that a hotel keeper who places before his guests at dinner partridge sells the birds, although the guests paid a total sum for board and lodging. *People v. Clair*, 221 N. Y. 108, 116 N. E. 868."

In *Cushing v. Rodman*, (1936) 65 App. D. C. 258, 82 Fed. (2nd) 864, 868, 104 A. L. R. 1028, the Court of Appeals of the District of Columbia, in an exhaustive review of the decisions adopting the contract theory of liability, as well as those supporting the tort theory, announced that: "As to the general question, we think the better view is that which bases liability upon breach of an implied warranty, rather than upon negligence only. At the outset we think it unnecessary to rest the choice on the answer to the somewhat narrow question whether or not there can be said to be, in the technical sense, a sale of the food. As has been well said in 1 *Williston on Sales*, (2nd Ed. 1924), sec. 242b, p. 486: 'Even though the transaction is not a sale, every argument for implying a warranty in the sale of food is applicable with even greater force to the

serving of food to a guest or customer at an inn or restaurant. The basis of implied warranty is justifiable reliance on the judgment or skill of the warrantor, and to charge the seller of an unopened can of food for the consequences of the inferiority of the contents of the can, and to hold free from liability a restaurant keeper who opens the can on his premises and serves its contents to a customer, would be a strange inconsistency. A sale is not the only transaction in which a warranty may be implied.' " Other cases in point are collected in the annotations to the cases reported in the volumes of the *A. L. R.* cited *supra,* and in 50 *A. L. R.* 231, 98 *A. L. R.* 687.

In *Stanfield v. Woolworth Co.,* (1936) 143 Kan. 117, 53 P. (2nd) 878, 881, the court, in adopting the warrantial theory of liability after an elaborate review of the English, Irish, and American cases, pointed out that it had been repeatedly held that a restaurant keeper who furnished liquor to patrons with their meals, the price of the meal covering the cost of the liquor, violated a statute prohibiting the sale of liquor (*State v. Lotti,* 72 Vt. 115, 47 A. 392; *State v. Wenzel,* 72 N. H. 396, 56 A. 918; *Lauer v. District of Columbia,* 11 App. D. C. 453), that furnishing filthy, decomposed, or adulterated food at meals violated a statute forbidding the sale of such food (*State v. Grays Harbor Commercial Co.,* 124 Wash. 227, 214 P. 13), that furnishing oleomargerine as a substitute for butter at a meal in a public restaurant was a sale (*Comm. v. Miller,* 131 Pa. 118, 18 A. 938), that serving quail to patrons of an eating place was an "exposing for sale" in violation of a statute forbidding the sale of quail. *Comm. v. Phoenix Hotel Co.,* 157 Ky. 180, 162 S. W. 823. Commenting on these cases, the court added: "By what reason can it be said that furnishing, as a part of a meal, articles the sale of which is prohibited constitutes a sale of such articles, but other articles furnished as a part of the meal were not sold?"

In *Koplin v. Liggett Co.* (1935) 119 Pa. Super. 529, 181 A. 381, an action for injuries resulting from serving

to a patron in a restaurant soup containing a centipede, the court said, referring to *Nock v. Coca Cola Bottling Works*, 102 Pa. Super. 515, 156 A. 537: "The action was of a mixed character, containing elements of tort and contract, wherein we said: 'We think the sounder reasoning is in support of the theory that a sale of food or beverage impliedly warrants that it shall be free of a foreign matter which may be injurious to the well-being of the consumer. Nor do we see any just reason, from a public policy standpoint, as the health or human life may be involved, why a sale of food or beverage intended for human consumption should not carry with it an implied warranty that it is suitable and wholesome.' " See, also, *Schuler v. Union News Co.*, Mass., 4 N. E. (2nd) 465; *Goetten v. Owl Drug Co.*, 6 Cal. (2nd) 683, 59 P. (2nd) 142.

There are no doubt many cases opposed to the warrantial theory of liability, in perhaps a majority of American jurisdictions, although that is by no means clear, but the reasoning in those cases which support that theory rests upon what seems to be a firmer and sounder basis, are more consistent with natural reason, more in accord with the requirements of any rational public policy, and more consonant with the historical development of the remedy than the reasoning in those cases which deny that theory.

To say that a restaurant keeper who delivers a sandwich, or some other similar portion of food, to a patron who pays for it, when the restaurant keeper knows that the purchaser intends to eat it, makes no representation that it is fit to eat, if it is to be eaten in the restaurant, but does make such a representation if it is to be taken out of the restaurant, seems absurd. The very fact that the restaurant keeper is in business is in itself a representation that he offers for sale food that is fit to eat. He has it in his power to see that the food is fit to eat, he buys the raw material, he employs the servants who prepare it, he selects the place in which it is prepared, he supervises and controls all the steps, instrumentalities, and agents employed in supplying the customer's demand

for wholesome food. The customer neither knows nor can know anything of the food or its preparation until it is before him, and in many cases not then until he eats it.

For those reasons the plaintiff's first prayer was in my judgment properly granted, the defendant's C and D prayers properly refused, and the demurrer to the second amended declaration overruled.

In addition to the facts stated above, there was testimony offered by the defendant that the bread served the plaintiff was bought from the Ward Baking Company, wrapped and sliced, and served as received. It did not appear that there was any particular inspection of it.

Assuming that the remedy was in tort, the fact that a piece of tin one-eighth of an inch wide and one-half an inch long was found in a slice of bread furnished the customer was evidence of negligence in the preparation of the sandwich sufficient to take the case to a jury. The docrine of *res ipsa loquitur* would seem to have no application to such a case, for that doctrine only applies where harm is caused by the aberration or condition of some object which could not have occurred but for the abnormal or irregular functioning of some agency or instrumentality within the exclusive control of the defendant, but where the particular abnormality or defect which caused the aberration is unknown. In this case defendant used and handled the bread to prepare the sandwich. Tin is no more palatable, and no safer, in bread than pins were in *Ryan v. Progressive Grocery Stores*, 255 N. Y. 388, 175 N. E. 105. The defendant selected the bread for the sandwich, and it may reasonably be inferred that had it exercised reasonable care in handling and inspecting it, that it would have discovered the tin. The tin caused the harm. So that the cause of the harm and the reason for it are known; that is, it is known how it occurred and why it occurred.

Therefore there was evidence of negligence, and, as defendant's demurrer prayer went to the whole case and did not refer to the pleadings, it was properly refused, whether defendant's liability was in tort or in contract.

A majority of the court have, however, taken the position that defendant's liability is in tort and not in contract, and, since the plaintiff's prayer was based upon the warrantial theory, logically they have decided that the judgment must be reversed. I have been unable to accept that conclusion, and have filed this memorandum to explain the reason for my dissent, and I am authorized to say that Judge Urner concurs in the view here expressed.